**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YOSEMIT MARRERO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD LUNDGREN INC. d/b/a LUNDGREN HONDA OF AUBURN and REACH LOCAL, INC. d/b/a LOCALIQ,<br><br>Defendants. | C.A. No. 25-cv-13925 |

**DEFENDANTS' BRIEF IN**
**ADVANCE OF SEPTEMBER 9, 2026 HEARING**

Since the parties were last before the Court, the law has further advanced and Defendants have deepened their investigation. Both these developments confirm that Plaintiff's claims cannot survive. At the Court's invitation, Defendants Richard Lundgren Inc d/b/a Lundgren Honda of Auburn ("Lundgren Honda") and ReachLocal, Inc. d/b/a LocaliQ (collectively, "Defendants") submit this brief regarding their anticipated dispositive motion and the most efficient way to manage discovery. *See* D.I. 23.

Defendants anticipate filing a dispositive motion for judgment on the pleadings and respectfully request that the Court stay any and all discovery until the resolution of that motion. Defendants' Rule 12(c) motion, which Defendants are prepared to file within 30 days, is grounded in *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). In *Steidinger*, the Seventh Circuit held that the same section of the Telephone Consumer Protection Act ("TCPA") on which Plaintiff bases his claim here—47 U.S.C. § 227(c)(5)—does not apply to text messages. And at least one district court has already followed *Steidinger*, dismissing a very similar TCPA class

action prosecuted by the same counsel who represents the Plaintiff. *See Rush v. Selectquote Ins. Servs., Inc.*, No. 6:26-cv-3157, 2026 WL 2495598 (W.D. Mo. July 30, 2026). If this Court, like the *Rush* court, follows the *Steidinger* reasoning and logic, Plaintiff's claims will be dismissed, avoiding the need for discovery altogether.

Alternatively, should the Court decline to stay all discovery while considering Defendants' Rule 12(c) motion, the Court should direct that discovery be conducted in phases. Bifurcation is appropriate because Defendants have meritorious, silver-bullet defenses to Plaintiff's individual claim that, like the *Steidinger* issue, will resolve this case entirely without the need for burdensome class-wide discovery. These defenses include:

(1) Plaintiff's telephone number is not residential, as required to sustain a claim under the TCPA's Do Not Call ("DNC") provisions; and/or

(2) Plaintiff provided prior express consent to receive the text messages at issue by filling out a webform before receiving the messages.

As set forth below, even without discovery, Defendants have begun to assemble evidence to prove these two defenses. With discovery, Defendants expect that the Court will find one or both defenses meritorious and dismiss Plaintiff's individual claim. The requested bifurcation is not unprecedented or unusual; courts regularly bifurcate discovery in TCPA class actions to promote judicial economy, avoid unnecessary expense for and burden on the parties, and ensure proportionality. Phased discovery will allow the Court to evaluate Defendants' individual defenses before subjecting the parties to the extraordinary cost and burden of class-wide discovery that may ultimately prove unnecessary.

## BACKGROUND

On December 21, 2025, Plaintiff Yosemit Marrero initiated this action, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, based on marketing text messages Defendants allegedly sent to his "residential" cell phone without his prior express written

consent. D.I. 1. Based on this individual claim, Plaintiff seeks to represent a nationwide class of individuals who purportedly received, also without prior express written consent, similar text messages on their residential phones. D.I. 1. On February 19, 2026, Defendants filed their answer, denying Plaintiffs' allegations and asserting numerous defenses, including, without limitation, that Plaintiff's number does not qualify as a residential number, Plaintiff had provided prior written consent, and that no class is certifiable. D.I. 14.

Four months passed with no docket activity and no communication from Plaintiff to the Defendants. On July 9, 2026, counsel for the parties conducted a conference pursuant to Fed. R. Civ. P. 26(f). Later that same day, Plaintiff served its first set of written discovery on Defendants. *See* Ex. A. Those interrogatories and document requests sought sweeping and burdensome discovery into Defendants' TCPA and National Do Not Call Registry compliance policies, as well as information and research into potentially thousands of leads and text messages spanning a four-year period. *Id.*

On July 27, 2026, the Court held a Rule 16.1 Scheduling Conference during which the Court and counsel discussed a number of issues, including the import of the Seventh Circuit's recent decision in *Steidinger* as well as the viability of Plaintiff's individual claim and the appropriateness of Plaintiff serving as class representative. At that hearing, the court temporarily bifurcated discovery and set a status hearing for September 9, 2026. D.I. 23.

## LEGAL STANDARD

Rule 26(c)(1) provides that a court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." The movant must demonstrate good cause, which requires a showing that the requested discovery is unduly burdensome or that phased discovery would serve the interests of justice and judicial economy. Further, Rule 26(b)(1) limits the scope of discovery to matters that are "relevant to any party's

claim or defense and proportional to the needs of the case." In assessing proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Additionally, Rule 16(b) grants courts broad authority to manage pretrial proceedings, including the power to structure and sequence discovery. Courts have inherent discretion to phase discovery to promote efficiency, avoid unnecessary expense, and ensure that discovery remains proportional to the needs of the case.

## ARGUMENT

### A. *Steidinger* dooms Plaintiff's claims as a matter of law.

The private right of action Plaintiff seeks to enforce requires that an individual "has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). The question of whether a text message falls within the meaning of "telephone call" is a question of pure statutory interpretation that requires no discovery, no expert testimony, and no factual development. This Court can decide the applicability of § 227(c)(5) to Plaintiff's "text message" claims entirely on the face of the Complaint and view of the statute, itself.

Less than two months ago, the Seventh Circuit held that § 227(c)(5) does not cover text messages. *Steidinger*, 182 F.4th at 535–37. The court applied the foundational principle that statutes must be interpreted according to the ordinary public meaning of their terms at the time of enactment. In 1991, a "telephone" was defined as "an instrument for reproducing sounds at a distance," and a "call" meant "to get or try to get into communication by telephone." *Id.* at 535–36. Because text messages do not reproduce sounds, the Seventh Circuit concluded that text

messages do not fall within the ordinary meaning of a "telephone call" as that term was understood in 1991. *Id.*

The court further observed that the text and structure of the TCPA confirms this reading: § 227(a)(4) defines "telephone solicitation" to include both a "telephone call *or message*," yet § 227(c)(5) creates a private right of action only for "phone calls"—not for "telephone solicitations" and not for "messages." *Id.* at 536–37. Under the meaningful-variation canon, the deliberate use of a narrower term in § 227(c)(5) must be given effect. As the Seventh Circuit explained, Congress used a different term in these two subsections and therefore intended a different meaning. *Id.* The court of appeals also pointed to Congress's 2018 amendment of § 227(e) to explicitly cover text messages and define the term "text message"—an amendment that Congress did not extend to § 227(c)(5)—as further evidence that the private right of action provision does not reach text messages. *Id.* at 539.

Notably, *Steidinger* is the first decision interpreting § 227(c)(5) by any of the twelve circuit courts in the wake of *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). There, the Supreme Court held that district courts are not bound by the Federal Communications Commission's ("FCC") interpretations of the TCPA. *McLaughlin*, 606 U.S. at 168. Specifically, the Supreme Court held that the Hobbs Act, which some circuits previously read to require district courts to follow FCC orders without question, does *not* preclude district courts from independently determining whether the FCC's statutory interpretation is correct. *Id.* at 155 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)). Instead, courts must determine the meaning of the statute under ordinary principles of statutory interpretation, affording only "appropriate respect"—not deference—to the agency's interpretation. *Id.* at 152. In other words, courts must independently interpret the TCPA rather than defer to FCC interpretations. *Id.*

Following *McLaughlin* but even before *Steidinger*, numerous district courts construed § 227(c)(5) and concluded that the statute does *not* apply to text messages. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025); *see also Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270 (N.D. Fla. 2025) (holding that even giving "appropriate respect" to the FCC's contrary interpretation, that respect does not require adopting a statutory reading that conflicts with the ordinary public meaning of clear statutory text); *El-Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Radvansky v. Kendo Holdings, Inc.*, No. 23-cv-00214, 2026 WL 810929, at *2 (N.D. Ga. Feb 12, 2026) (under a Rule 12(c) motion for judgment on the pleadings)[1]; *Radvansky v. 1-800-FLOWERS.COM, Inc.*, 1:25-cv-2811, 2026 WL 456919, at *3–5 (N.D. Ga. Feb. 17, 2026); *Lopresti v. Nouveau Essentials Mktg., LLC*, No. 5:25-cv-00282, 2026 WL 964758, at *4–6 (M.D. Fla. Feb. 26, 2026) (under a Rule 12(c) motion for judgment on the pleadings); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 624–25 (N.D. Ohio 2026); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367 (M.D. Fla. 2026); *Richards v. Fashion Nova, LLC*, No. 1:25-cv-1145, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026). And most recently, relying upon *Steidinger*, a Missouri district court also found that §227(c)(5) did not include text messages. *See Rush*, 2026 WL 2495598 at *4 (finding plaintiff failed to state a claim because "text messages" are not "telephone calls" under § 227(c)(5)). Accordingly, there is now a considerable amount of authority holding that § 227(c)(5) does not apply to text messages.[2]

---

[1] Plaintiff's counsel here, Anthony Paronich, was also the Plaintiff's counsel in *Radvansky*. Notably, Plaintiff Radvansky filed an appeal, which he voluntarily dismissed shortly before *Steidinger* was decided. *See* Case No. 26-cv-10837 (11th Cir.), Dkt. Nos. 6, 14.

[2] Defendants do not intend to intimate that post-*McLaughlin* decisions have been unanimous. *See Wilson v. Easy Spirit LLC*, No. 3:25-CV-112, 2026 WL 884170, at *4 n.3 (D. Conn. Mar. 31, 2026), for a discussion of the split in authority among federal courts nationwide.

As indicated at the July 27, 2026 Rule 16 Conference, Plaintiff will likely resort to the First Circuit's decision in *Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019). In *Breda*, the court wrote: "The TCPA also applies to other forms of communication, such as text messages." *Id.* at 4 n.1. However, in *Steidinger*, the Seventh Circuit carefully analyzed *Breda* (and cases containing similar statements from other circuit courts) and found them unpersuasive for two reasons: first, *Breda* involved a claim under § 227(b)(1)(A)(iii), not § 227(c)(5); and second, *Breda* and similar cases were decided based on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), and all of these cases concern claims brought under § 227(b), not §227(c)(5). *Steidinger*, 182 F.4th at 538. Seen in this light, as well as in light of *McLaughlin* and *Loper Bright*, the First Circuit has never directly addressed the issue present here: whether § 227(c)(5) specifically applies to text messages. This Court would therefore be writing on a clean slate as to the specific § 227(c)(5) TCPA provision at issue.

**B. Discovery should be stayed pending resolution of Defendants' 12(c) motion.**

It is well-accepted that a district court has broad discretion to stay discovery pending resolution of a dispositive motion. *See Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "[F]ederal courts possess the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (citations omitted). And courts in this district have applied this discretion to defer discovery while a Rule 12 motion is pending. *See, e.g.*, *Jimenez v. Nielsen*, 326 F.R.D. 357 (D. Mass. 2018).

As the moving party, Defendants have the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1). *See Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988). In assessing "good cause," courts typically consider factors including: (1) prejudice or tactical disadvantage to

the non-moving party; (2) whether issues will be simplified; and (3) whether a stay will reduce the burden of litigation on the parties. *See Richards v. Fashion Nova, LLC*, 807 F. Supp. 3d 861 (S.D. Ind. 2025) (granting stay pending resolution of defendant's motion to dismiss text message TCPA class action lawsuit based on § 227(c)(5)); *see also Englishtown, Inc. v. Rosetta Stone Inc.*, 962 F. Supp. 2d 355, 359 (D. Mass. 2013) (reciting discretionary standard and review of factors including prejudice to the non-moving party, simplification of the issues to be tried, and the status of the litigation). All these factors favor a stay here.

*First*, the motion (if granted) would be dispositive. Plaintiff's Complaint rests on a single theory—that Defendants violated the TCPA by sending text messages. If text messages are not "phone calls" under § 227(c)(5), Plaintiff's entire case fails. There is no alternative theory, no other statutory provision invoked, and no way to replead around the problem. And this Court has previously held that "a pending dispositive motion constitutes good cause for a stay of discovery." *Hillside Plastics, Inc. v. Dominion & Grimm U.S.A., Inc.*, No. 3:17-cv-30037-MAP, 2018 WL 3727365, *2 (D. Mass. Aug. 6, 2018).

*Second*, a stay will not prejudice Plaintiff. As noted above, Plaintiff filed this case late last year and, even after Defendants answered, then sat idle for many months. *See supra* at __. Nothing about Plaintiff's conduct has demonstrated a sense of urgency.

*Third*, the Court can decide the motion without any discovery. The question is one of statutory interpretation, requiring only the complaint, the statute, and legal argument. No depositions, no document requests, and no expert witnesses are needed.

*Fourth*, the burden of class action discovery in a TCPA case is enormous. As the court in *Richards* specifically found, class-wide TCPA discovery would cover text messaging records to and from a potentially vast number of individuals located across the country, spanning a multi-

year period, as well as large volumes of records concerning consent obtained by the defendant and the purchase histories of its customer base. *Richards*, 807 F. Supp. 3d at 866. And the discovery Plaintiff has already served here concretely demonstrates the onus he seeks to impose on Defendants. *See* Ex. A. Requiring Defendants to shoulder this one-sided discovery burden before resolving a threshold legal question would be a profound waste of judicial and party resources. *Richards*, 807 F. Supp. 3d at 866–67. For this reason, the *Richards* court stayed discovery pending resolution of the dispositive TCPA motion. *Id.* This Court should do the same. *See also Malanowski v. Wells Fargo Bank N.A. Trustee Option One Mortgage Corp. Trust 2005-1 Asset-Backed-Certificates, Series 2005-1*, No. 3:21-11628-MGM, 2022 WL 2758474 (D. Mass. July 14, 2022) (granting motion to stay pending resolution of motion for judgment on the pleadings given that burden of responding to potentially unnecessary discovery outweighs any prejudice of limited stay).

**C. Alternatively, the Court should bifurcate discovery and initial discovery should be limited to the merits of Plaintiff's individual claim.**

As an alternative to a complete stay, the Court should conduct phased discovery, limiting initial discovery to the Plaintiff's individual claim. As explained below, Defendants have at least two silver-bullet defenses to Plaintiff's individual claim that will resolve this case without the need for burdensome class-wide discovery.

**1. Publicly available information shows Plaintiff's telephone number is not residential as required to sustain a claim under the TCPA's Do Not Call ("DNC") provisions.**

Even without full discovery, Plaintiff's ability to meet his burden to show that Defendants sent messages to a residential number is dubious. Indeed, the evidence Defendants' investigation has amassed to date reveals that Plaintiff has used and uses the number at issue for his sole-proprietor LLC's firearms training business—that is, not residential purposes. These business uses thwart Plaintiff's

ability to bring a claim under 47 U.S.C. § 227(c)(5).

The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> [. . .]
>
> (B) to initiate any telephone call to any ***residential*** telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B); . . . .

47 U.S.C. § 227(b)(1)(B) (emphasis added). Section 227(c) empowers the FCC to exercise its authority to adopt regulations that established a National Do Not Call Registry. Those regulations prohibit any "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2) (emphasis added). And the meaning of "residential" in this context depends on the type of subscriber and the function for which the subscriber uses the phone. *See Cacho v McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 200–08 (S.D.N.Y. 2024); *see also Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS, 2022 U.S. Dist. LEXIS 19502, at *4 (D. Mass. Feb. 3, 2022) (holding that "residential" is "a functional term not tethered to a particular technology").

Given the focus of interpreting "residential" functionally and affording the term its plain meaning, calls placed to business numbers generally do not give rise to a claim under the TCPA's

Do Not Call provisions.[3] To be sure, the FCC has clarified that "the National Do-Not-Call Registry applies [only] to 'residential subscribers' and does not preclude calls to businesses." 23 FCC Red. 9779, 9785 (Jun. 17, 2008); *see* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry"); 16 C.F.R. § 310.6(b)(7) (exempting from Do Not Call protections any "[t]elephone calls between a telemarketer and any business"). Applying this authority, courts have dismissed TCPA claims where (as Defendants will show here) there is evidence that a cell phone line is used only or primarily as a business line. *See Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670, 2020 WL 2044730, at *11 (W.D. Mo. Apr. 28, 2020); *Mattson v. Quicken Loans Inc.*, No. 3:18-cv-00989, 2019 WL 7630856, at *5 (D. Or. Nov. 7, 2019); *Bank v. Indep. Energy Grp., LLC*, No. 12-CV-1369, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015); *see also Gillam v. Reliance First Cap., LLC*, No. 21-CV-4774, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (holding that a residential subscriber is one who maintains a phone "for residential purposes"—i.e., for personal activities associated with his or her private, domestic life).

Most recently, in *Newell v. JR Cap., LLC*, C.A. No. 25-1419, 2026 WL 2408527 (E.D. Pa. Aug. 17, 2026), the court granted summary judgment after finding that the plaintiff's listing and use of his "personal" cell phone in conducting his sole-proprietor LLC business rendered the number non-residential. The *Newell* court articulated the process for assessing whether the cell phone use was "non-residential" as follows:

---

[3] Construing the TCPA according to its plain language, a "residence" is simply "[t]he place where one actually lives," that is, one's "dwelling." *Residence*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Residential" means "of or relating to residence or residences." *Residential*, MERRIAM-WEBSTER DICTIONARY (2024), *at* https://www.merriam-webster.com/dictionary/residential (last visited Sept. 2, 2026). Further, a "subscriber" is "[a] person who makes a regular payment in return for entitlement to . . . access to a commercially provided service." *Subscriber*, OXFORD ENGLISH DICTIONARY (2024).

> Although the FCC has not issued clear guidance on when phone numbers with a history of mixed-use (such as those used in connection with home-based businesses) cease being residential lines and become business lines, [a] majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation. While such a number is presumptively residential within the meaning of § 227(c), the Ninth Circuit has held that defendants may rebut that presumption by showing the plaintiff used it "to such an extent and in such a manner as to be properly regarded as" a business rather than a residential line. To determine whether the defendant rebutted the presumption, the Ninth Circuit explained that courts consider the following five factors: (1) how the plaintiff holds the phone number out to the public; (2) whether the plaintiff's phone is registered with the telephone company as a residential or business line; (3) how much the plaintiff uses their phone for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line.

*Newell*, 2026 WL 2408527 at *7 (internal citations omitted).

Even without discovery from Plaintiff, and using only publicly available information, Defendants have begun to learn "how the plaintiff holds the phone number [ending in 7725] out to the public." *Id.* It appears that Plaintiff is employed by the United States Department of Homeland Security as an Immigration and Customs Enforcement ("ICE") agent. In addition to that work, Plaintiff also incorporated a business known as Straight Shooter LLC, for which he serves as Manager and through which he offers firearms training services. Investigation shows that the 7725 phone number is not residential and that Plaintiff routinely uses the number for business, including:

a. As the proprietor of Straight Shooter LLC, Plaintiff maintains a Facebook Page. In advertisements on that Facebook Page, Plaintiff lists his 7725 number as the payment method for courses and training offered by Straight Shooter LLC, *see* Ex. B;[4]

[4] Out of an abundance of caution and despite that the documents are publicly available, Defendants have redacted Exs. B–E for purposes of this filing in light of Plaintiff's claims and to avoid allegations of improper filing of personal identifying information. Defendants reserve the right to publicly file these documents in connection with future submissions.

b. As the proprietor of Straight Shooter LLC, Plaintiff maintains a website, "508straightshooter.com." In the Internet Corporation for Assigned Names and Numbers ("ICANN")[5] registration for the Straight Shooter LLC website, Plaintiff provided his 7725 number as the contact number for his business, *see* Ex. C; and

c. The Commonwealth of Massachusetts maintains an online list of certified firearms instructors, using contact information provided by those instructors. In his listing on that official state website, Plaintiff lists the 7725 number as his contact number, *see* Ex. D.

Public sources also suggest that Plaintiff maintains a separate residential phone number, namely a traditional landline for his home in Worcester, Massachusetts. Moreover, the records indicate Plaintiff also has owned 10 phone numbers, including 6 cellular numbers—any one of which could be his true "personal" cell phone number. *See* Ex. E. He may also have a cell phone provided by ICE.

Should the Court conclude that discovery will proceed in some fashion, this preliminary information warrants allowing Defendants to employ the discovery process to fully flesh out whether Plaintiff's cell phone is, in fact, "residential" as that term is defined under the TCPA. Based on what Defendants have determined so far (described above), this action seems very similar to *Newell*, where (in a case also filed by Plaintiff's counsel) the district court granted the defendant summary judgment after finding that the Plaintiff's use of his cell phone in conducting his sole-proprietor LLC business rendered the number non-residential.

**2. Plaintiff gave prior written consent to contact his number while visiting one or more websites.**

Defendants further contend that Plaintiff gave consent to receive messages from Defendants. Defendants obtain their sales lead information only from lists of persons who have

---

[5] ICANN is a quasi-government, global, multi-stakeholder organization, overseen most recently by the United States Department of Commerce, which bears international responsibility for coordinating the name spaces and numerical spaces of the Internet. All websites must be registered with ICANN. *See* https://en.wikipedia.org/wiki/ICANN.

given consent to receive marketing messages. Based on that standard procedure alone, Defendants believe that they can establish Plaintiff gave consent to receive the text marketing messages he lists in his complaint. Moreover, Defendants have identified information that, on June 11, 2025, a computer or phone using the IP address 66.249.83.86 accessed a website, www.samplesandrebates.com, and the operator of the computer or phone entered Plaintiff's email address and gave consent to receiving marketing messages from Lundgren Honda. That timing is wholly consistent with Plaintiff's allegation that he received his first text message from Lundgren Honda on July 12, 2025.

**3. Any discovery allowed should be divided into two phases.**

Defendants respectfully request that, in the event that the Court is not inclined to stay all discovery pending resolution of forthcoming Defendants' Rule 12(c) motion, discovery be divided into two distinct phases. As described in more detail in the Joint Statement, D.I. 19, discovery should proceed as follows:

> **Phase I**: Discovery limited to Plaintiff's individual TCPA claim and Defendants' defenses thereto, including (a) whether Plaintiff's telephone number was residential at the relevant time, and (b) whether Plaintiff provided prior express consent to receive the text messages at issue.
>
> **Phase II**: Class-wide discovery, to proceed only if necessary after the resolution of Phase I issues.

This bifurcated approach is well-established in TCPA class actions and courts routinely exercise their discretion to bifurcate discovery in class action cases, particularly where threshold individual issues may be dispositive. *See Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2019 WL 957129, at *2 (D. Mass. Feb. 27, 2019) (bifurcating TCPA discovery and staying class discovery until resolution of summary judgment motion on Plaintiff's individual claim); *Osidi v. Assurance IQ, LLC*, No. 21-CV-11320-ADB, 2022 WL 623733 (D. Mass. Mar. 3, 2022)

(bifurcating TCPA discovery and staying class discovery until resolution of summary judgment on individual claims); *see also Mantha v. QuoteWizard.com, LLC*, No. 1:19-cv-12235-LTS, Dkt. 279 (D. Mass. June 28, 2022) (bifurcating discovery into Phase I addressing individual claim and Phase II addressing class-wide issues) (Ex. F); *Weingrad v. Exact Care Pharmacy*, LLC, No. 2:25-cv-01843, Dkt. 32 (E.D. Pa. July 28, 2025) (ordering Phase I discovery limited to individual TCPA claims, before class-wide discovery) (Ex. G).

## CONCLUSION

Defendants' counsel looks forward to discussing these issues with the Court at the upcoming September 9, 2026 hearing and is available should the Court have specific questions or concerns before then.

Dated: September 2, 2026

*/s/ Heather B. Repicky*

Heather B. Repicky (BBO #663347)
hrepicky@btlaw.com
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Telephone: (617)316-5317

Mark P. Miller (*pro hac vice*)
mark.miller@btlaw.com
Paul Olszowka (*pro hac vice*)
paul.olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive
Chicago, IL 60606-2833
Telephone: (312) 357-1313

*Attorneys for Defendants Richard Lundgren d/b/a Lundgren Honda of Auburn and Reach Local, Inc., d/b/a LocaliQ*

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2026, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and, if not so registered, that paper copies will be emailed to such parties or their counsel.

*/s/ Heather B. Repicky*