**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YOSEMIT MARRERO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD LUNDGREN INC. d/b/a LUNDGREN HONDA OF AUBURN and REACH LOCAL, INC. d/b/a LOCALIQ,<br><br>Defendants. | C.A. No. 25-cv-13925 |

**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 1

III. FACTUAL ALLEGATIONS ........ 2

IV. ARGUMENT ........ 3

A. Section 227(c)(5) does not apply to text messages, which are the only communications Plaintiff alleges he received from Defendants........ 3

1. The plain language of § 227(c)(5) limits the private right of action to "telephone calls"—that is, communications via sound. ........ 3

2. The TCPA's other provisions confirm that a "telephone call" does not include text messages. ........ 6

3. Neither the FCC's implementing regulations nor its interpretations of § 227(c) control. ........ 8

B. Section 227(c) does not apply to Plaintiff's cellular telephone. ........ 11

1. The plain meaning of "residential telephone subscriber" does not encompass cell phone users. ........ 11

2. The TCPA distinguishes between "residential" and "cellular." ........ 13

3. The FCC exceeded its statutory authority by treating wireless registrants as residential subscribers. ........ 14

V. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ....8

*Anthony v. Brian Mktg. Grp.*,
Case No. 24-80800-CIV,
2026 WL 2685650 (S.D. Fla. Sep. 11, 2026) .... *passim*

*Asgrow Seed Co. v. Winterboer*,
513 U.S. 179 (1995) ....12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....2, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....2

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016) ....4

*Bostock v. Clayton Cnty. Ga.*,
590 U.S. 644 (2020) ....3

*Breda v. Cellco Partnership*,
934 F.3d 1 (1st Cir. 2019) ....7

*Brown v. Hursh Grp.*,
C.A. No. 26-cv-00185,
2026 WL 2906613 (D. Col. Sep. 28, 2026) ....10

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ....7

*Card v. RJ Reynolds Tobacco Holdings, Inc.*,
1:26-CV-433,
2026 WL 2673068, at *2 (M.D.N.C. Sep. 3, 2026) ....8, 10

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2002) ....13

*Conrad v. Hart Consumer Products*,
No. 4:24-cv-307,
2026 WL 2741623 (N.D. Ala. Sep. 16, 2026) ....4, 5, 10

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025)....................................................................5

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................................................................................6, 7, 13

*Frappier v. Countrywide Home Loans, Inc.*,
645 F.3d 51 (1st Cir. 2011)...............................................................................2

*Glasser v. Hilton Grand Vacations Co., LLC*,
948 F.3d 1301 (11th Cir. 2020) ...........................................................................13, 15

*Insurance Marketing Coalition Ltd. v. FCC*,
127 F.4th 303 (11th Cir. 2025) ...........................................................................15

*James v. Smarter Contact, Inc.*,
828 F. Supp. 3d 1367 (M.D. Fla. 2026)....................................................................10

*Jones v. Blackstone Med. Srvs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) .....................................................................5

*King v. Burwell*,
576 U.S. 473 (2015)..........................................................................................3

*Koeller v. OxAppsec Sec., Inc.*,
Case No. 4:25-cv-0641,
2026 WL 2935851 (E.D. Mo. Sep. 30, 2026).........................................................1, 12, 13, 15

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................................................................................3, 9, 10, 15

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)....................................................................................1, 9, 11, 15

*Nielsen v. Preap*,
586 U.S. 392 (2019)..........................................................................................7

*Pérez-Acevedo v. Rivero-Cubano*,
520 F.3d 26 (1st Cir. 2008)...............................................................................1

*Radvansky v. 1-800-Flowers.com, Inc.*,
C.A. No. 1:25-CV-2811,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ................................................................10

*Radvansky v. 1st Class Medical*,
C.A. No. 25-cv-03796,
2026 WL 28589562 (D. Col. Sep. 23, 2026)..........................................................4, 9, 10

*Richards v. Fashion Nova, LLC*,
No. 1:25-cv-01145,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026)....10

*Rush v. Selectquote Ins. Srvs., Inc.*,
6:26-cv-3157,
2026 WL 2495598 (W.D. Mo. July 30, 2026)....4, 10

*Russello v. United States*,
464 U.S. 16 (1983)....14

*Sayed v. Naturopathica Holistic Health, Inc.*,
No. 25-cv-00847,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)....5

*Sebelius v. Cloer*,
569 U.S. 369 (2013)....3

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022)....6

*Steidinger v. Blackstone Medical Services*,
182 F.4th 532 (7th Cir. 2026).... *passim*

*Stockdale v. Skymount Prop. Grp, LLC*,
825 F. Supp. 3d 622 (N.D. Ohio 2026)....10

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
566 U.S. 560 (2012)....12

*Wisconsin Central Ltd. v. United States*,
585 U.S. 274 (2018)....4

**Statutes**

47 U.S.C. § 227(a)(3)....7

47 U.S.C. § 227(a)(4)....6, 7

47 U.S.C. § 227(b)(1)....7, 13, 14

47 U.S.C. § 227(b)(2)....14

47 U.S.C. § 227(b)(3)....7

47 U.S.C. § 227(c).... *passim*

47 U.S.C. § 227(c)(1)....6, 11, 15

47 U.S.C. § 227(c)(2) ... 15

47 U.S.C. § 227(c)(3) ... 6

47 U.S.C. § 227(c)(4) ... 6

47 U.S.C. § 227(c)(5) ... *passim*

47 U.S.C. § 227(d)(1) ... 7

47 U.S.C. § 227(e)(8) ... 8

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, tit. V, § 503(a), 132 Stat. 348, 1091–92 ... 8

**Other Authorities**

47 C.F.R. § 64.1200(c) ... 3, 8, 11

47 C.F.R. § 64.1200(d) ... 8

Federal Rule of Civil Procedure 12(c) ... 1

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 17 FCC Rcd. 17459 (2002) ... 14

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 (2003) ... 9, 15

## I. INTRODUCTION

Plaintiff's claim—premised on the receipt of text messages on his cellular phone and grounded exclusively in § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA")—suffers from two independent defects. First, as held in *Steidinger v. Blackstone Medical Services*, 182 F.4th 532 (7th Cir. 2026), text messages are not subject to 47 U.S.C. § 227(c)(5). Rather, that statute applies only to "telephone calls." Since *Steidinger*, a parade of district courts in four other circuits have agreed. Second, § 227(c) protects only "residential telephone subscribers," not cellular phone users. *See Koeller v. OxAppsec Sec., Inc.*, Case No. 4:25-cv-0641, 2026 WL 2935851 (E.D. Mo. Sep. 30, 2026); *Anthony v. Brian Mktg. Grp.*, Case No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sep. 11, 2026). Yet the Complaint contains no allegations related to telephone calls made to a residential telephone subscriber. Not only can these pleading defects not be cured by amendment, but Plaintiff cannot rescue his theory by relying on prior interpretations and regulations adopted by the Federal Communications Commission ("FCC") on the scope and meaning of the TCPA. The Supreme Court has instructed this Court to independently interpret 47 U.S.C. § 227(c)(5), giving the agency's interpretation only "appropriate respect" as opposed to required deference. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152–168 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)). For these reasons, and as discussed in detail below, Plaintiff's claims cannot be sustained as a matter of law and judgment should be entered in favor of Defendants.

## II. LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed and early enough not to delay trial. Fed. R. Civ. P. 12(c). The Rule 12(c) standard is "essentially the same" as the Rule 12(b)(6) standard. *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d

26, 29 (1st Cir. 2008); *see also Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 55–56 (1st Cir. 2011). The court accepts well-pleaded factual allegations as true, draws reasonable inferences in the nonmovant's favor, and determines whether the pleadings state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). That deference does not extend to legal conclusions, conclusory labels, or factual assertions that merely recite an element. *Iqbal*, 556 U.S. at 678. Nor must the court accept a complaint's construction of a statute. *Frappier*, 645 F.3d at 56. Judgment is proper where, as here, the complaint's own allegations establish that the challenged conduct falls outside the governing statute.

## III. FACTUAL ALLEGATIONS

Plaintiff Yosemit Marrero, a Massachusetts resident, brings this putative class action against Lundgren Honda of Auburn, a Massachusetts automobile dealership, and LocaliQ, a Delaware digital-marketing company that Lundgren Honda hired to design, manage, and transmit promotional SMS and MMS campaigns to prospective customers. D.I. 1 at ¶¶ 5–7, 17–20. Plaintiff alleges that his cellular telephone number (ending in 5527) is used for personal, residential, and household purposes and was registered on the National Do Not Call Registry ("Registry") on August 2, 2014. *Id*. at ¶ 21. Plaintiff claims he has never been a customer of either Defendant, never provided his cellular number to either Defendant, and never consented to receive marketing messages on his cell phone. *Id.* at ¶¶ 23, 32–33. Between approximately July and November 2025, Plaintiff allegedly received multiple unsolicited marketing text messages on his cell phone (ending in 5527), originating from telephone number +1 (508) 690-4127 advertising automobiles available for purchase from Lundgren Honda of Auburn. *Id.* at ¶¶ 24–26.

Plaintiff asserts a single cause of action under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), as modified by § 64.1200(e), seeking statutory damages and injunctive relief. *Id.* at ¶¶ 48–54. Notably, no allegation in the Complaint identifies a voice telephone call or a residential landline—every challenged communication is described as a text message or multimedia message sent to Plaintiff's cell phone.

## IV. ARGUMENT

### A. Section 227(c)(5) does not apply to text messages, which are the only communications Plaintiff alleges he received from Defendants.

#### 1. The plain language of § 227(c)(5) limits the private right of action to "telephone calls"—that is, communications via sound.

The analysis begins with the plain statutory language, which has not changed since Congress's enactment of the TCPA in 1991. *See, e.g.*, *King v. Burwell*, 576 U.S. 473, 486 (2015) ("We begin with the text of Section 36B"); *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) ("As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (quotation modified)). Here, § 227(c)(5) provides a private right of action to

> [a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection.

47 U.S.C. § 227(c)(5) (emphasis added). The statutory trigger is therefore the receipt of more than one "telephone call." Because the TCPA does not define "telephone call," this Court must give the term its ordinary public meaning at the time of the statute's enactment. *See Bostock v. Clayton Cnty. Ga.*, 590 U.S. 644, 654 (2020); *see also Loper Bright*, 603 U.S. at 400 ("That is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment.") (quotation modified)). For this reason, and those reasons discussed further below, the meaning of

"telephone call"—and thus the basis for a cause of action under § 227(c)(5)—is narrow and does not include a text message.

Courts, including the Seventh Circuit, have looked to contemporaneous dictionaries to hold that the meaning and scope of a "telephone call" is limited to a "communication via sound." *Steidinger*, 182 F.4th at 535–36 (citing Webster's Ninth New Collegiate Dictionary (1991)); *see also Radvansky v. 1st Class Medical*, C.A. No. 25-cv-03796, 2026 WL 28589562, at *2–3 (D. Col. Sep. 23, 2026) (adopting analysis from *Steidinger* based, in part, on contemporaneous dictionary definitions); *Conrad v. Hart Consumer Products*, No. 4:24-cv-307, 2026 WL 2741623, at *9 (N.D. Ala. Sep. 16, 2026) (relying on Webster dictionary definitions to find that a "telephone call" in 1991 meant 'the act of communicating with a person by using a device that reproduces sound to be heard at a distance.'"); *Rush v. Selectquote Ins. Srvs., Inc.*, 6:26-cv-3157, 2026 WL 2495598, *2 (W.D. Mo. July 30, 2026) (same). Because a text message does not reproduce sounds, it is not a "telephone call" as a reasonable reader of the statute would have understood that term in 1991. *See, e.g.*, *Steidinger*, 182 F.4th at 535–36; *Radvansky*, 2026 WL 28589562, at *2–3; *Conrad*, 2026 WL 2741623, at *9, *Rush*, 2026 WL 2495598, at *2.

In addition, there can be no dispute that Congress did not contemplate text messaging when it enacted the TCPA. The first text message was sent in December 1992, one year *after* the statute's enactment. *Steidinger*, 182 F.4th at 535–36; *see also Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016). Congress thus could not have embedded the then-nonexistent technology in the ordinary meaning of "telephone call." Nonetheless, a statute's fixed meaning can encompass genuinely new applications of an existing concept only when the new application retains the defining characteristics of that concept. *See Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018). A silent written message generated by a computer sent through a service provider

lacks the real-time transmission of sound that defines a 1991 telephone call. *See Conrad*, 2026 WL 2741623, at *11 (discussing why the term "telephone call" should not be expanded to include non-analogous later-developed technology such as text messages). Consequently, a text message cannot be said to be merely a new application of the existing concept of a telephone call.

But even setting aside dictionary definitions and historical facts, modern common speech confirms the distinct concepts of a telephone call and a text message. Indeed, the ordinary meaning of "telephone call" has remained constant and, to this day, does not include text messages. As one court observed, "No one refers to a text as a telephone call." *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). And a person who says, "I received a telephone call," communicates that a voice connection was attempted or occurred—not that written characters appeared in a messaging application. *See, e.g.*, *Jones v. Blackstone Med. Srvs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (finding that "in today's American parlance, 'telephone call' means something entirely different from 'text message'"); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("[I]n common American Eng-lish [sic] usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication . . . ."). Similarly,

> [a]ssume you hear the text notification ding on your friend's cell phone. Would you declare "You're getting a call!" If you did, would your friend deem you ordinary or odd?

*Conrad*, 2026 WL 2741623, at *9 (finding that "ordinary users have always referred to text messages as "texts" or "messages," not "telephone calls"). At bottom, the ordinary distinction between a "telephone call" and a "text message" should not be discarded simply because both communications may travel through the same handheld device.

Moreover, remedial-purpose arguments cannot override the enacted limits of § 227(c)(5). The Supreme Court has rejected efforts to broaden the TCPA merely because technology has

evolved, explaining that courts may not recast the statute as an "agile tool" to reach modern practices that its text does not cover. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408–09 (2021). As *Steidinger* recognized, "[r]epeated, unwanted text messages are undoubtedly a nuisance." 182 F.4th at 540. But nuisance alone cannot rewrite a statute or create a statutory cause of action; the remedy Congress selected—limited to the receipt of more than one "telephone call"—governs.

**2. The TCPA's other provisions confirm that a "telephone call" does not include text messages.**

Even if there were some ambiguity within § 227(c), the statute's surrounding language confirms that text messages are *not* included within the definition of a "telephone call." Not only does the TCPA demonstrate that Congress appreciated the difference between a "telephone call" and a "message" in 1991, but Congress more recently has amended certain sections of the Act to specifically cover text messages. It has not so amended § 227(c).

Elsewhere within the TCPA, Congress specifically called out communications via a "message" as distinct from a "telephone call." For example, § 227(a)(4) defines "telephone solicitation" as "the initiation of a *telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4) (emphasis added). Congress then used this broader term of "telephone solicitation" in describing the FCC's regulatory task and the national database. *See* 47 U.S.C. §§ 227(c)(1), (c)(3), and (c)(4). It, however, chose not to use "telephone solicitation" in § 227(c)(5), the private-remedy provision Plaintiff invokes. Rather, Congress authorized suit only for more than one "telephone call." One of the basic canons of statutory construction—the presumption of consistent usage—instructs that this choice should not be disregarded. When Congress "has used one term in one place, and a materially different term in another," courts presume that the difference conveys a different idea. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (quotation omitted). Likewise, the

surplusage canon (*verba cum effectu sunt accipienda*) provides that the court should not needlessly interpret a term that causes it to duplicate another term or cause it to have no consequence. Congress's formulation of "telephone call or message" in §227(a)(4) to define "telephone solicitation" would be redundant if the meaning of a "telephone call" already included a message. *See Nielsen v. Preap*, 586 U.S. 392, 414 (2019). The only reading that gives effect to each word is that a "telephone solicitation" can occur through either of two distinct categories—a "telephone call" or a "message." Critically, § 227(c)(5) creates a cause of action only with respect to the first of these categories.

Section 227(d)(1) of the TCPA further demonstrates that Congress understood written communications sent through telephone infrastructure as "messages," not "calls." That section specifically regulates the sending of a "message" by a facsimile machine—equipment that transcribes text or images into or from an electronic signal. 47 U.S.C. §§ 227(a)(3), (d)(1)(B). Fax transmissions were the text-based analog available in 1991, and Congress called them messages. *Steidinger*, 182 F.4th at 536–37. Yet, again, Congress chose not to include "messages" in § 227(c)(5).[1]

Congress also demonstrated that it knows how to add text messages expressly when it intends to do so. In 2018, Congress amended § 227(e) to cover text messages and added a

[1] Cases interpreting whether text messages give rise to a private cause of action under § 227(b)(3) of the TCPA are inapposite. Section 227(b)(3) broadly authorizes an action "based on a violation of" subsection (b) or its regulations. 47 U.S.C. § 227(b)(3). Section 227(c)(5), by contrast, specifies the event that permits suit: receipt of more than one "telephone call." 47 U.S.C. § 227(c)(5). As a result, cases assuming or holding that a text may be treated as a call under § 227(b)—including *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), and *Breda v. Cellco Partnership*, 934 F.3d 1, 4 n.1 (1st Cir. 2019)—do not answer the distinct question of whether a text may be treated as a "telephone call" under § 227(c)(5). *See, e.g.*, *Duguid*, 592 U.S. 395, 400 n.2 (2021) (explaining that *Campbell-Ewald* merely assumed the uncontested proposition regarding the scope of § 227(b) without resolving it); *Steidinger*, 182 F.4th at 537 (noting that *Breda* concerned § 227(b)(1)(A)(iii), not the narrower text of § 227(c)(5)).

subsection-specific definition of "text message." Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, tit. V, § 503(a), 132 Stat. 348, 1091–92; 47 U.S.C. § 227(e)(8)(B). It did not make a parallel amendment to § 227(c)(5). *Steidinger*, 182 F.4th at 538; *Card v. R.J. Reynold Tobacco Holdings, Inc.*, 1:26-CV-433, 2026 WL 2673068, at *2 (M.D.N.C. Sep. 3, 2026). Courts must respect that decision rather than override it by transplanting language from one statutory section to another.

**3. Neither the FCC's implementing regulations nor its interpretations of § 227(c) control.**

Plaintiff cannot rely upon FCC regulations or its prior interpretations to overcome the plain meaning of § 227(c)(5).

The FCC implementing provisions that Plaintiff invokes in the Complaint do not and cannot alter the "telephone call" statutory requirement to include text messages. *See* D.I. 1 at ¶ 16. For example, 47 C.F.R. § 64.1200(c) regulates "telephone solicitation[s]" to residential telephone subscribers and § 64.1200(d) requires procedures for maintaining company-specific do-not-call lists. Neither subsection uses the terms "text message," "SMS," or "MMS." On the other hand, § 64.1200(e) states that portions of paragraphs (c) and (d) apply to telemarketing calls or text messages to wireless numbers. But a regulation cannot expand § 227(c)(5)'s congressionally-created private remedy beyond a "telephone call." *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[L]anguage in a regulation" cannot "conjure up a private cause of action that has not been authorized by Congress").

Similarly, to the extent that Plaintiff's theory rests on FCC interpretations that treat text messages as "telephone calls" or extend national Do-Not-Call registry protections to texts, such reliance is unavailing. In 2003, the FCC issued a Report and Order that revised its existing rules and adopted new rules to govern its implementation of the TCPA in view of, among other things,

"significant changes in the technologies and methods used to contact consumers." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14018 ¶ 2 (2003) (hereinafter, "2003 FCC Order"). Specifically, in discussing § 227(b)'s restrictions on autodialed calls to wireless numbers on the Do-Not-Call Registry, the FCC stated that these restrictions "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." 2003 FCC Order at ¶ 165. But the FCC's interpretation extending Registry protections to text messages does not redefine the private-action trigger in § 227(c)(5). *Id.*; *see also Steidinger*, 182 F.4th at 538 (finding unpersuasive reliance on 2003 FCC Order to redefine § 227(c)(5)); *Radvansky*, 2026 WL 2858562 at *3 (adopting reasoning of *Steidinger*). Because the 2003 FCC Order analyzed different statutory language and did not define § 227(c)(5)'s term "telephone call," it bears little, if any, persuasive force here.

In all events, the FCC's interpretation cannot supply the missing statutory language. In *Loper Bright*, the Supreme Court overruled *Chevron* deference and held that courts must exercise independent judgment about statutory meaning. 603 U.S. at 392, 400, 412–13. A year later, the Supreme Court specifically held that the Hobbs Act does not bind district courts to the FCC's prior interpretations of the TCPA in enforcement proceedings. *McLaughlin*, 606 U.S. at 155, 168. The court instead must "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at 168. Appropriate respect is not mandatory or even considerable deference. And while the FCC's expertise may inform a genuinely technical question, the meaning of "telephone call" in a statute is a pure legal question for this Court. Especially in the wake of *Loper Bright* and *McLauglin*, several courts have found that the agency's policy preference for protecting wireless consumers does not alter the words Congress used and enacted into law. *See Steidinger*, 182 F.4th at 538–

39; *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1370–73 (M.D. Fla. 2026) (post-*McLaughlin*, unbound by FCC interpretations, freely reaching conclusion that "text messages are not included in the ambit of § 227(c)(5)); *Richards v. Fashion Nova, LLC*, No. 1:25-cv-01145, 2026 WL 847568, at *2–3 (S.D. Ind. Mar. 26, 2026) (interpreting "telephone call" in § 227(c)(5) post-*McLaughlin* as not inclusive of text messages); *Stockdale v. Skymount Prop. Grp, LLC*, 825 F. Supp. 3d 622, 625–26 (N.D. Ohio 2026) (finding that given the plain language of § 227(c)(5) that the court's analysis "stops" without regard to contradictory agency decisions); *Radvansky v. 1-800-Flowers.com, Inc.*, C.A. No. 1:25-CV-2811, 2026 WL 456919, at *3–4 (N.D. Ga. Feb. 17, 2026) (finding claims based on text messages and § 227(c)(5) fail as a matter of law post-*McLaughlin*).[2]

* * *

The Seventh Circuit framed and answered the exact question presented here:

> Based on the ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227, we find that texts are not calls.

*Steidinger*, 182 F.4th at 535, 540. And since *Steidinger*, five federal district courts in four circuits—the Fourth, Eighth, Tenth, and Eleventh Circuits—have reached the same result, dismissing virtually identical text-message-based TCPA claims filed by Plaintiff's lawyer, Mr. Paronich. *See Brown v. Hursh Grp.*, C.A. No. 26-cv-00185, 2026 WL 2906613 (D. Col. Sep. 28, 2026) (following reasoning in *Steidinger* and *Radvansky*); *Radvansky*, 2026 WL 2858562, at *3; *Conrad*, 2026 WL 2741623 at *13; *Card*, 2026 WL 2673068 at * 3; *Rush*, 2026 WL 2495598 at *4. Those decisions apply the TCPA as written, follow the Supreme Court's mandate in *Loper*

---

[2] Contrary district court decisions do not create ambiguity that would warrant agency control. *See Card*, 2026 WL 2673068, at *2 & n.3 (acknowledging a post-*McLaughlin* split and adopting *Steidinger*).

*Bright* and *McLaughlin*, and analyze § 227(c)(5) under ordinary canons of statutory construction. Applying the rubric of ordinary meaning, meaningful variation, and surplusage yields just one answer: § 227(c)(5)'s private right of action does not extend to text messages. Plaintiff's claim therefore fails as a matter of law.

**B. Section 227(c) does not apply to Plaintiff's cellular telephone.**

The Complaint also fails for the independent reason that § 227(c) protects only "residential telephone subscribers," which Plaintiff is not. Plaintiff's sole cause of action alleges that LocaliQ sent "automated marketing text messages and multimedia messages" to Plaintiff's "cellular telephone[]" and that Lundgren Honda is directly or vicariously liable for those messages. D.I. 1 at ¶¶ 17–25, 49–53. With no allegation directed to a residential landline, Plaintiff's claim fails.

**1. The plain meaning of "residential telephone subscriber" does not encompass cell phone users.**

Congress directed the FCC to protect "residential telephone subscribers' privacy rights." *See* 47 U.S.C. § 227(c)(1) (directing the FCC to initiate rulemaking proceedings "concerning the need to protect residential telephone subscribers' privacy rights"); *id.* at § 227(c)(2) (requiring FCC to prescribe regulations to protect "the privacy rights described" in § 227(c)(1)). Congress expressly contemplated that such protections "may require . . . a single national database to compile a list of telephone numbers of "*residential subscribers* who object to receiving telephone solicitations." *Id.* at § 227(c)(3) (emphasis added). And the FCC's implementing regulation accordingly prohibits specified solicitations to "*[a] residential telephone subscriber*." 47 C.F.R. § 64.1200(c)(1)–(2) (emphasis added). It is a violation of these regulations that give rise to a private cause of action under § 227(c)(5). Section 227(c)(5) provides that a person may bring an action if she has "received more than one telephone call within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection* . . . ." 47

U.S.C. § 227(c)(5) (emphasis added). Accordingly, the scope of § 227(c)(5) is limited by the scope of Congress's grant to the FCC to implement regulations.

Just as with the term "telephone call," because the TCPA does not define "residential telephone subscriber" the phrase receives its ordinary meaning when the statute was enacted. *See Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)). Contemporaneous dictionaries tied "residential" to a residence or home: "of or connected with residence," "of, characterized by, or suitable for, residences or homes," and "chiefly for residents rather than transients." *Anthony*, 2026 WL 2685650, at *7 (quoting Webster's Third New International Dictionary (1986) and Webster's New World Dictionary, Third College Edition (1988)). "Residence" meant a "dwelling, place, or abode, especially a house," or "[a] house where one's home is; a dwelling house." *Id.* (quoting the same sources and Black's Law Dictionary (6th ed. 1990)). The noun "subscriber" carried the same location-based feature. One contemporaneous definition was "an individual having commercial telephone equipment installed on his premises." *Id.* Other definitions described one who pays to be connected to a service or enters a name for a service. *Id.* Together, the words denoted a person subscribing to telephone service physically connected to the person's dwelling. At minimum, they contemplated equipment tethered to a home. *Koeller*, 2026 WL 2935851, at *3 (finding that "a residential telephone is simply a home phone").

A cellular telephone is different in kind from a residential telephone. Its defining characteristic is mobility; it operates wirelessly and travels with its user rather than being installed at a dwelling. The fact that a subscriber may use a cell phone while at home, for personal matters, or as the subscriber's only telephone does not convert the service into a residential telephone. Neither location of use nor purpose of use of the service can alone define the protected category

of users. Congress chose the category "residential telephone subscriber"—that is, users who subscribe to a telephone service physically connected to their residence or dwelling. In fact, common usage of the term "residential telephone" in 1991 confirms that this category does not include wireless or cellular phones. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1233–34 & n.1 (9th Cir. 2002) (Ikuta, J., dissenting) (listing magazines, manuals, and industry publications from the enactment period showing that "residential telephone" referred to a landline at a residence). At that time, cellular adoption was still in its infancy and the original public meaning—not present-day ubiquity—controls. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1308 (11th Cir. 2020) (holding that changes in technology and marketing strategies is not a change in the TCPA); *Duguid*, 592 U.S. at 408–09. And courts cannot revise a fixed statutory category because consumers now rely on a newer service. The policy decision regarding whether cellular users should receive every protection Congress gave to residential landline subscribers belongs to Congress alone.

**2. The TCPA distinguishes between "residential" and "cellular."**

Congress's usage elsewhere in the TCPA confirms the ordinary meaning of a residential subscriber and the distinctness of same from a cellular telephone subscriber. The clearest distinction is found in § 227(b), which addresses materially similar conduct in separate provisions based on the type of service. Section 227(b)(1)(A)(iii) prohibits certain calls to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Section 227(b)(1)(B), separately, prohibits certain calls to "any residential telephone line." 47 U.S.C. § 227(b)(1)(B). Congress thus was aware of the difference between cellular and residential telephones and accounted for them distinctly in adjacent, but different provisions of the TCPA. *See Koeller*, 2026 WL 2935851, at *3; *Anthony*, 2026 WL 2685650, at *9. As a further example,

§ 227(b)(2)(C) authorizes exemptions for calls to numbers assigned to cellular telephone service whereas § 227(b)(2)(B) separately addresses calls to residential telephone lines.

Despite the distinction between residential and cellular telephone service recognized throughout the TCPA, § 227(c) exclusively identifies "residential" subscribers. That deliberate choice—and the omission of cellular telephone service—is strong evidence that Congress did not use "residential" as an umbrella for cellular. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (where Congress uses language in one section and omits it in another, courts generally presume the choice intentional). Moreover, interpreting "residential" to include "cellular" would create surplusage. If every cellular subscriber whose phone is used for personal purposes were already covered as a residential telephone subscriber, § 227(b)(1)(A)(iii)'s express protection for cellular service would add little or nothing beyond the residential-line provision in § 227(b)(1)(B). And this court should not construe the TCPA's provisions in manner which would make provisions redundant or meaningless. *Russello*, 464 U.S. at 23; see *Anthony*, 2026 WL 2685650, at *9–10.[3]

**3. The FCC exceeded its statutory authority by treating wireless registrants as residential subscribers.**

The FCC initially recognized the line Congress drew between residential and cellular subscribers. In 2002, the FCC observed that an FTC proposal appeared to allow wireless subscribers to register even though "the TCPA grants authority to the Commission to establish a national database *only for residential subscribers*." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 17 FCC Rcd. 17459, 17501 ¶ 112 (2002) (emphasis

[3] The Complaint tracks the statutory divide. He does not allege that Defendants called equipment installed at his residence or a residential landline. He alleges that Defendants transmitted SMS and MMS messages "to consumers' cellular telephones," D.I. 1 at ¶ 17; that the campaign used "SMS and MMS text messaging," *id.* at ¶ 18; and that the texts disrupted "his cellular telephone," *id.* at ¶ 34. Plaintiffs' characterization of his number as "non-commercial" and "residential" is a conclusory legal label contradicted by the specific factual allegations, which the Court need not accept. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

added). Yet the 2003 FCC Order changed course and announced: "we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" 18 FCC Rcd. at 14039 ¶ 36. This new presumption was driven by technological and policy developments: more consumers carried cell phones, some abandoned landlines, and wireless phones were increasingly used like home phones. *Id.* at 14038–40 ¶¶ 34–36. Although those considerations may support legislation, they cannot enlarge authority confined to protecting "residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1)–(2). The agency cannot convert one expressly distinct category of protections into another by its own fiat.

Recent TCPA decisions illustrate the limit. In *Insurance Marketing Coalition Ltd. v. FCC*, the Eleventh Circuit held that the FCC exceeded its authority by adding restrictions to Congress's "prior express consent" standard. 127 F.4th 303, 312–18 (11th Cir. 2025). And in *Glasser v. Hilton Grand Vacations Co.*, the court rejected an FCC effort to expand the statutory definition of an automatic telephone dialing system beyond what Congress wrote. 948 F.3d at 1308–10. The governing principle is the same: authority to implement the TCPA is not authority to rewrite its coverage.

Again, after *Loper Bright* and *McLaughlin*, this Court must decide independently whether the FCC's presumption fits the statute. It does not. As one district court recently held after an extensive textual and historical analysis:

> [T]he FCC's definition of "residential telephone subscriber" as promulgated in the agency's 2003 Order is contrary to the text of the TCPA. Section 227(c) applies to "residential telephone subscribers" and does not authorize the FCC to initiate or promulgate rules protecting the privacy rights of cellular phone users."

*Anthony*, 2026 WL 2685650, at *12. And just earlier this week, another district court found "no legitimate basis for stretching that clear understanding [of § 227(c)] to include subscribers of cellular telephone services." *Koeller*, 2026 WL 2935851, at *3. Accordingly, the private right of

action in § 227(c)(5), which remedies violations of regulations validly prescribed under § 227(c), does not extend to a cellular telephone user. Registry enrollment cannot change that conclusion; an agency-maintained list does not determine the scope of Congress's cause of action, and a subscriber cannot create statutory coverage simply by registering a number.

* * *

Even if a text could qualify as a "telephone call" (which it cannot), Plaintiff would still have to allege a call within the residential-subscriber regime Congress authorized. Plaintiff's repeated allegations of messages to a cellular telephone establish that he did not and cannot do so.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's assertions—that he received text messages to his cellular phone for which Defendants are liable under 47 U.S.C. § 227(c)(5)—are legally futile. Based on either or both defects, Defendants request that the Court grant their motion for judgment on the pleadings and enter judgment in Defendants' favor on Plaintiff's sole cause of action.[4]

---

[4] If the Court denies this motion, certification for immediate appeal of the Court's order would be appropriate under 28 U.S.C. §1292(b). This motion "involves a controlling question of law" and "there is substantial ground for difference of opinion" on these issues. Moreover, given that the First Circuit Court of Appeals has not weighed in on these purely legal and clearly dispositive issues, there is little question that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. §1292(b).

Dated: October 2, 2026

*/s/ Heather B. Repicky*
Heather B. Repicky (BBO #663347)
hrepicky@btlaw.com
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Telephone: (617)316-5317

Mark P. Miller (*pro hac vice*)
mark.miller@btlaw.com
Paul Olszowka (*pro hac vice*)
paul.olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive
Chicago, IL 60606-2833
Telephone: (312) 357-1313

*Attorneys for Defendants Richard Lundgren d/b/a Lundgren Honda of Auburn and Reach Local, Inc., d/b/a LocaliQ*

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and, if not so registered, that paper copies will be emailed to such parties or their counsel.

*/s/ Heather B. Repicky*