**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YOSEMIT MARRERO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br>v.<br><br>RICHARD LUNDGREN INC. d/b/a LUNDGREN HONDA OF AUBURN and REACH LOCAL, INC. d/b/a LOCALIQ, | Case No. 4:25-cv-13925-MRG<br><br>CLASS ACTION |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Yosemit Marrero ("Plaintiff") submits this memorandum of law in opposition to Defendants Richard Lundgren Inc. d/b/a Lundgren Honda of Auburn ("Lundgren Honda") and Reach Local, Inc. d/b/a LocaliQ's ("LocaliQ," and together, "Defendants") Motion for Judgment on the Pleadings, [ECF No. 32] (the "Motion"),[1] and states:

## I. INTRODUCTION

Defendants ask this Court to hold that a text message can never be a "telephone call" under section 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). Plaintiff alleges that Defendants sent him multiple marketing text messages while his number was registered on the National Do Not Call Registry. [ECF No. 1] ¶¶ 21, 24–26. The Supreme Court, the First Circuit, and the majority of courts to address the question, including judges of this Court, recognize that the word "call" in the TCPA encompasses text messages. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to other forms of communication, such as text messages."); *Sagar v. Kelly Automotive Grp.*, 2021 WL 5567408, at *4 (D. Mass. 2021) (Saris, J.); *Weingrad v. EverQuote, Inc.*, No. 26-cv-10197-MJJ, 2026 U.S. Dist. LEXIS 158431, at *14-15 (D. Mass. June 26, 2026) (Levenson, M.J.); *Howard v. Repub. Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021).[2]

---

[1] Citations to "Mot." refer to the page numbers appearing at the bottom of Defendants' memorandum of law in support of the Motion, [ECF No. 32].

[2] *See also, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 U.S. Dist. LEXIS 739 (N.D.W. Va. Jan. 5, 2026) (concluding that text messaging is communication by telephone); *Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *16-17 (D.N.J. Mar. 31, 2026) (concluding that "telephone call" in § 227(c)(5) encompasses text messages) (citations omitted); *Zelma v. Wonder Grp. Inc.*, No. 25cv3232 (EP) (CF), 2025 U.S. Dist. LEXIS 208329, at *5-6 (D.N.J. Oct. 22, 2025) (citation omitted); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026); *McGonigle v. Shopperschoice.com, L.L.C.*, No.

Defendants' contrary position rests principally on *Steidinger v. Blackstone Medical Services*, No. 25-2398, 182 F.4th 532, 2026 U.S. App. LEXIS 20613 (7th Cir. July 14, 2026), and on district court decisions outside this Circuit that follow it. Mot. at 1, 10. *Steidinger* does not bind this Court, and Defendants acknowledge that courts have divided since *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Mot. at 10 n.2 (citing *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068, at *2 & n.3 (M.D.N.C. Sep. 3, 2026)). Those decisions share two flaws: they freeze the statute's meaning in 1991 and treat modern parlance as dispositive, and they misread a 2018 amendment to a different subsection. *See, e.g.*, *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, 2026 U.S. Dist. LEXIS 32415, at *11 (N.D. Ga. Feb. 17, 2026).

Defendants' alternative argument—that a cell phone user can never be a "residential telephone subscriber," Mot. at 11–16—fares no better. Section 227(c) protects subscribers according to how they use their phones, not according to the technology that carries the call, and courts in this District, the First Circuit, and the Ninth Circuit have treated registered cell phone numbers as residential. *See Barton*, 525 F. Supp. 3d at 201–02; *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223–25 (9th Cir. 2022). Plaintiff alleges that his number is used for personal, residential, and

---

25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026); *Hernandez v. Bedford Dental L.L.C.*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208 (N.D. Ill. Feb. 4, 2026); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340 (W.D. Tex. Jan. 13, 2026); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358 (C.D. Cal. Dec. 3, 2025); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025).

household purposes and was registered on the Do Not Call Registry before the messages at issue. [ECF No. 1] ¶ 21. Nothing more is required at this stage.

## II. LEGAL STANDARD

As Defendants acknowledge, the Rule 12(c) standard is "essentially the same" as the Rule 12(b)(6) standard. Mot. at 1 (quoting *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

## III. ARGUMENT

### A. Text messages are "telephone calls" under section 227(c)(5)

#### *1. Controlling and persuasive authority in this Circuit recognizes that text messages are "calls" under the TCPA*

The Supreme Court has recognized that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald*, 577 U.S. at 156. The First Circuit then explained that "[t]he TCPA also applies to other forms of communication, such as text messages." *Breda*, 934 F.3d at 4 n.1 (citing *Campbell-Ewald*, 577 U.S. at 156). The First Circuit spoke of "[t]he TCPA" generally; it did not limit that statement to any particular subsection. Had it intended to do so, narrower language was readily available.

Judges of this Court have applied that authority accordingly. In *Barton*, Judge Hillman held that "[t]he overwhelming weight of precedent holds that text messages are calls for the purposes of the TCPA," 525 F. Supp. 3d at 198, and, after considering the Supreme Court's intervening decision in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), reiterated that ruling on reconsideration, reasoning that the First Circuit's interpretation in *Breda* controlled and that *Duguid* "did no more than reinforce *Campbell-Ewald*, and therefore does not supersede the First Circuit's interpretation in *Breda*." *Barton v. Temescal Wellness, LLC*, 541 F. Supp. 3d 138, 139 (D.

Mass. 2021). *Barton* then denied the defendant's motion to dismiss a Do Not Call Registry count premised on those same text messages. 525 F. Supp. 3d at 201–03. Since *McLaughlin*, courts in this District have continued to treat text messages as calls actionable under the TCPA. *See Weingrad*, 2026 U.S. Dist. LEXIS 158431, at *14-15; *Ward v. Liberty Mut. Ins. Co.*, No. 24-10526-BEM, 2026 WL 1707142, at *1 (D. Mass. June 12, 2026); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *4 n.2 (D. Mass. Mar. 18, 2026) ("Text messages constitute calls under the TCPA.").

***2. The ordinary meaning of "call" in 1991 encompasses text messages***

To interpret a statutory term, courts "look to the meaning of the word at the time the statute was enacted…often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) (citations omitted). The word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That is because the ordinary and contemporary meaning of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009) (quoting Webster's Third New International Dictionary (2002)); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (same). This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

That established definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was

enacted. *See, e.g.*, *Satterfield*, 569 F.3d at 953–54; *Lozano*, 702 F. Supp. 2d at 1007. Texting is a means of communicating with someone by telephone, so that definition readily encompasses texts. *See, e.g.*, *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025) ("This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted.").

The same is true of the original autodialer provisions in section 227(b), which prohibit using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s displayed an incoming message as written text—usually a phone number to call.[3] The use of "call" in connection with pagers thus makes "clear that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005.

Defendants emphasize that the first text message was not sent until December 1992, so that Congress "could not have embedded the then-nonexistent technology in the ordinary meaning of 'telephone call.'" Mot. at 4. But "statutes must be permitted to apply to technologies not in existence when a statute was drafted," *Lozano*, 702 F. Supp. 2d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)), and "[w]hile every statute's meaning is fixed at the time of enactment," "new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). "In determining whether section 227(c) applies to text

---

[3] *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "call," which "refers to both oral and written communications," is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Defendants next argue that "[n]o one refers to a text as a telephone call." Mot. at 5 (quoting *Davis*, 797 F. Supp. 3d at 1273); *see also id.* (relying on *Conrad v. Hart Consumer Products*, No. 4:24-cv-307, 2026 WL 2741623, at *9 (N.D. Ala. Sep. 16, 2026)). But statutory interpretation does not turn on modern colloquial usage, and when language has evolved since enactment, current intuitions can be affirmatively misleading. In *New Prime, Inc. v. Oliveira*, for example, the Supreme Court explained that the statutory term "contracts of employment" "might call to mind only agreements between employers and employees" today, but that this "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which showed that "'contract of employment' usually meant nothing more than an agreement to perform work." 586 U.S. 105, 114 (2019). When contemporary intuition and original meaning diverge, the latter controls—not how an "ordinary person would think of a text message," *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025).

#### *3. Section 227's text and structure confirm that a "telephone call" includes a text message*

Reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions elsewhere in section 227(c) provides additional confirmation that text messages are covered. Start with the core of section 227(c)—its direction that the FCC prohibit "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the

Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are communications "ma[de] or transmitt[ed]" to a "telephone number." *Id.*

The term "telephone solicitation" also encompasses text messages. The statute defines it as "a telephone *call or message* … which is transmitted to any person" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). A message is "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, Black's Law Dictionary (6th ed. 1990) (emphasis added); *see also Message*, Oxford English Dictionary (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added). So both "call" and "message" describe communication with a phone, and neither differentiates between oral and written mediums. The definition thus "makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3.

More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4). At the same time, the statute uses broad and inclusive language to describe the myriad ways such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "*any*" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used that broad and disjunctive language to capture a wide range of potential communication mediums, including text messages. *See Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text,

which refers to 'telephone call[s] or message[s]'").[4] The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3.

### B. *Steidinger* and the out-of-circuit decisions on which Defendants rely are neither binding nor persuasive

*Steidinger* is out-of-circuit and not binding. Defendants answer that *Breda* arose under section 227(b), Mot. at 7 n.1, but the First Circuit spoke broadly of "[t]he TCPA," and "call" carries the same meaning throughout the statute. *Steidinger* is also an outlier: the Ninth Circuit reached the opposite conclusion in *Howard*, 164 F.4th at 1123–25, and, as Defendants concede, courts have divided since *McLaughlin*. Mot. at 10 n.2. The out-of-circuit district court decisions Defendants tally, Mot. at 10, are not binding, and several simply adopt *Steidinger*'s reasoning. *See* Mot. at 4, 9–10 & n.2 (describing *Radvansky*, *Card*, and *Brown v. Hursh Grp.*, No. 26-cv-00185, 2026 WL 2906613 (D. Colo. Sep. 28, 2026), as adopting or following *Steidinger*). And *Steidinger* rests on two errors: it misapplies the fixed-meaning canon, and it forces "call" and "message" into mutually exclusive categories that the TCPA does not support.

#### *1. Steidinger misapplies the fixed-meaning canon and imports an audio requirement into the word "call"*

*Steidinger* primarily relies on the 1991 dictionary definition of "call" as "to get or try to get into communication by telephone." 2026 U.S. App. LEXIS 20613, at *5; *see* Mot. at 3–4. That definition is functional: it asks only whether one person attempted to communicate with another by telephone, not whether the communication consisted of audible sound. *See Howard*, 164 F.4th

---

[4] *See also, e.g.*, *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) ("any person" has a "naturally broad and inclusive meaning"); *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998) (statute that used "any" multiple times was "straightforward and broad").

at 1124 ("Text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between *telephones*.'") (citations omitted) (emphasis added).

Yet the panel imported an audio requirement by consulting a separate 1991 definition of the noun "telephone"—an instrument capable of reproducing sound—and then assumed that every communication made by telephone must itself reproduce sound. *Steidinger*, 2026 U.S. App. LEXIS 20613, at *5. Defendants take the same approach, defining a 1991 "telephone call" as "the act of communicating with a person by using a device that reproduces sound to be heard at a distance." Mot. at 4 (quoting *Conrad*, 2026 WL 2741623, at *9). But "telephone" identifies the instrument through which the communication occurs; it does not convert or modify "call" into a synonym for audible conversation. As other courts have explained, to make a "telephone call" "is to 'get or try to get into communication' with an 'instrument for producing sounds at a distance.' A text message therefore falls reasonably within the literal language of the statute." *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 U.S. Dist. LEXIS 14155, at *14 (S.D. Tex. Jan. 26, 2026).

### 2. ***<u>Steidinger</u> is internally inconsistent, and the TCPA itself disproves its premise that a "call" and a "message" are mutually exclusive***

As a threshold matter, *Steidinger* is internally inconsistent: it concedes that text messages are "calls" under section 227(b) of the statute but then rejects that texts can be "calls" under section 227(c). *See id.* at *9-10. But courts have recognized that it would be incongruous to treat a text message as a "call" under one section of the TCPA but not another. *See, e.g.*, *Miller v. Direct Gen. Ins. Ag., Inc.*, No. 2:26-cv-01480-MWC-SSC, 2026 U.S. Dist. LEXIS 126614, at *13 (C.D. Cal. June 8, 2026) ("by the same logic and reasoning enunciated in *Howard*, text messages must constitute 'calls' under Section 227(c)(5) as well").

Moreover, *Steidinger*'s principal contextual argument—which Defendants adopt, Mot. at 6–7—that section 227(a)(4)'s definition of "telephone solicitation," which refers to a "call or message," shows that a communication categorized as a message cannot also be a call, *see* 2026 U.S. App. LEXIS 20613, at *7, does not withstand scrutiny. The statute's text confirms that "call" and "message" overlap rather than exclude one another. Indeed, section 227(b)(1)(B) regulates a "telephone call" made "to deliver a message." 47 U.S.C. § 227(b)(1)(B). In Congress's own usage, "call" describes the act or means of initiating telephone communication, while "message" describes what that communication delivers. That Congress wrote "call or message" therefore does not establish that the two categories are mutually exclusive; it establishes only that the broader term "telephone solicitation" was defined to ensure overlap so that it covers all voice and message telephone communications. The surplusage argument Defendants borrow from *Steidinger*, Mot. at 6–7 (citing *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)), fails for the same reason.

Section 227(c)(5)'s own structure reinforces that reading. The paragraph creates a private right of action for a person who receives more than one qualifying "telephone call" in violation of subsection (c)'s regulations, and it then provides an affirmative defense for a defendant that implemented reasonable procedures to prevent "*telephone solicitations* in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5)(C) (emphasis supplied). Because "telephone solicitation" is expressly defined to include a call or message, Congress's use of that defined term within the same paragraph is powerful evidence that section 227(c)(5) enforces the subsection's telephone solicitation rules—not that it silently carves out an audio-only exception. Congress would not have expressly provided an affirmative defense addressing "telephone solicitations," which include both calls and messages, if messages were categorically excluded from the liability provision to which that defense applies.

### C. The 2018 amendment to section 227(e) and Congress's later legislation do not narrow section 227(c)(5)

Defendants argue that because Congress added "text message" to section 227(e) in 2018 and did not make a parallel change to section 227(c)(5), Congress must have meant to exclude texts from the latter. Mot. at 7–8 (citing Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, tit. V, § 503(a), 132 Stat. 348, 1091–92; 47 U.S.C. § 227(e)(8)(B)). That argument fails for a straightforward reason: the amendment addressed caller-ID spoofing, not the Do Not Call Registry. As one court explained, the 2018 amendments "were not a wide-ranging revision of the TCPA, nor were they targeted in any way at the DNC registry or the related private right of action. In other words, no such purposeful action by Congress can be assumed." *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *7 (D. Conn. Mar. 31, 2026). The *expressio unius* canon is therefore inapplicable.

Nor does Congress's decision to leave section 227(c)(5) unamended help Defendants. In 2019 Congress amended the TCPA again, and in doing so recognized that the statute reaches text messages, providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)." 47 U.S.C. § 227(i)(1)(A); *see* Pub. L. 116-105, 133 Stat. 3274; *see also Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, at *16 (S.D. Tex. Jan. 26, 2026) (explaining that Congress has ratified the treatment of text messages as calls). Indeed, "[i]f Congress's inaction in 2018 is to be ascribed any meaning, the court interprets it as an acceptance of the existing case law and regulations that applied §227(c) to text messages. This read on Congress's inaction is in harmony with the oft-repeated principle that statutory stare decisis is particularly strong, because Congress can change what the courts have concluded." *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *10 (N.D. Ill. Mar. 27, 2026).

**D. The FCC's regulations and longstanding interpretation support Plaintiff's reading, and Plaintiff's claim does not depend on deference**

Defendants argue that Plaintiff cannot rely on FCC regulations or interpretations "to overcome the plain meaning of § 227(c)(5)," because a regulation cannot expand a statutory private remedy and because courts after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin* must interpret the statute independently. Mot. at 8–10 (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)). Both arguments attack a position Plaintiff does not take.

The FCC's interpretation does not independently create a private cause of action—Congress did. Congress made the private right of action turn on receipt of more than one qualifying communication "in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The current regulation provides that the national and company-specific do-not-call rules apply to persons making "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). *Steidinger* treated that rule as largely irrelevant because it was promulgated under subsection (c)'s general rulemaking authority rather than under section 227(c)(5) itself. 2026 U.S. App. LEXIS 20613, at *11.

Plaintiff's reading also does not depend on deference. After *Loper Bright* and *McLaughlin*, a court must "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." Mot. at 9 (quoting *McLaughlin*, 606 U.S. at 168). Applying those ordinary principles, the Court reaches the same result independently, as the Ninth Circuit did: "even under de novo review, those same two points support the conclusion that a 'text message' constitutes a 'call' within the meaning of the TCPA." *Howard*, 164 F.4th at 1123; *see also id.* at 1124 (explaining that it was "clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference").

And the "appropriate respect" owed to the FCC's interpretation is substantial. The FCC determined as early as 2003 that, when the TCPA says "call," it must mean not just traditional voice calls but also modern text messages. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]"). The FCC has consistently adhered to that position ever since. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *see also In re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 FCC Rcd. 2744, 2764 ¶ 55 (2023) (in proposing to clarify that Do Not Call Registry protections "apply to text messages as well as voice calls," noting that "the Commission has stated that 'text messages' are 'calls' for TCPA purposes").

Defendants respond that the 2003 order addressed section 227(b) rather than section 227(c)(5). Mot. at 8–9. But the FCC has since confirmed in a formal regulation that its interpretation also applies to text messages in the Do Not Call context. *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers[.]"). The FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3 (quoting 47 C.F.R. § 64.1200(a)(9)).

### E. Neither *Duguid* nor Defendants' remedial-purpose argument supports Defendants' reading

Defendants invoke *Duguid* for the proposition that courts may not recast the TCPA as an "agile tool" to reach modern practices, and argue that "remedial-purpose arguments cannot

override the enacted limits of § 227(c)(5)." Mot. at 5–6 (citing *Duguid*, 592 U.S. at 408–09). But *Duguid* addressed a narrow question concerning what qualifies as an "automatic telephone dialing system" under section 227(a)(1)—specifically, whether the equipment must use a random or sequential number generator. It did not decide what constitutes a "telephone call" under section 227(c)(5) or hold that text messages fall outside its protections.

### F. Plaintiff is a "residential telephone subscriber" protected by section 227(c)

Defendants argue in the alternative that section 227(c) protects only "residential telephone subscribers," that a cell phone user cannot be one, and that registering a number cannot change that. Mot. at 11–16. The statute does not say "landline." A decision of this Court, the First Circuit, and courts that have decided the question independently since *McLaughlin* reject Defendants' reading.

#### *1. Authority in this Circuit and elsewhere treats registered cell phone users as residential subscribers*

Plaintiff alleges that he uses his cellular number for personal, residential, and household purposes and that he registered it on the Registry on August 2, 2014, before receiving the messages at issue. [ECF No. 1] ¶ 21. That is enough. In *Barton*, Judge Hillman held that a plaintiff who alleged that her cell number was on the Registry had "sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number," even though she "did not explicitly allege that she uses her cell phone as a residential line," because "the Do Not Call Registry is only open to residential subscribers" and all reasonable inferences run in the plaintiff's favor at the pleading stage. 525 F. Supp. 3d at 201–02. *Barton* noted that other courts in this Circuit had likewise treated registration as sufficient at the motion to dismiss stage. *Id.* at 202 (citing *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020), and *Laccinole v. Appriss*, 453 F. Supp. 3d 499, 505–06 (D.R.I. 2020)).

The First Circuit has recognized the same point. In addressing the adequacy of a class settlement of TCPA Do Not Call claims, it observed that a defendant's "argument that cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary." *Murray*, 55 F.4th at 348 (citing 18 FCC Rcd. 14014, 14039–40 (2003)). That observation was not necessary to the First Circuit's holding, but it reflects that court's understanding of the law. The Ninth Circuit agrees. In *Chennette*, the defendants "conceded that cell phones can be 'residential' for purposes of § 227(c)," and the court held that the plaintiffs' registered cell phones were "presumptively residential for purposes of § 227(c)" at the pleading stage, leaving the defendants free to try to rebut the presumption after discovery. 50 F.4th at 1223, 1225–26. Defendants rely on Judge Ikuta's partial dissent from that decision, Mot. at 13, not on its holding.

Courts applying *McLaughlin*'s instruction to decide the question independently have reached the same result. *Wilson v. Hard Eight Nutrition LLC*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) ("[W]ithout deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c)."); *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025) ("The term 'residential' modifies 'subscribers,' meaning that the TCPA applies to a certain type of phone subscriber rather than to a particular type of phone technology."); *Radvansky*, 2026 WL 456919, at *3–4. Notably, *Radvansky*—which Defendants cite for their reading of the word "call," Mot. at 4, 9–10 & n.2—held that a cell phone user can be a residential telephone subscriber under section 227(c).

Defendants' contrary authority is thin. *Anthony v. Brian Marketing Group*, No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026), on which Defendants principally rely, Mot. at 12–15, denied a motion for default judgment against a defendant that "has not appeared or requested additional time to respond," so no one defended the FCC's interpretation. *Id.* at *2 n.4. It also acknowledged that it was departing from *Isaacs*. *Id.* at *8 n.10. *Koeller v. OxAppsec Security, Inc.*, No. 4:25-cv-0641, 2026 WL 2935851 (E.D. Mo. Sept. 30, 2026), Mot. at 12–13, 15, is likewise out-of-circuit. Neither binds this Court.

***2. The text and structure of section 227 show that "residential" describes the subscriber, not the technology***

Congress used materially different language in adjacent provisions of the TCPA. Section 227(b) refers to a "residential telephone line," 47 U.S.C. § 227(b)(1)(B), while section 227(c) protects "residential telephone subscribers' privacy rights," id. § 227(c)(1). The distinction matters: section 227(c) defines its protection by the subscriber's residential use, not by the technology used to receive communications. The operative word is "subscriber," and "residential" modifies it. In 1991, "residential" meant "used as a residence or by residents," so a "residential telephone subscriber" is one of the "people who use a telephone for a personal or private purpose—a use traditionally tied to the home—as opposed to a commercial or business use." *Hard Eight*, 804 F. Supp. 3d at 1149 (quoting Webster's Ninth New Collegiate Dictionary); *accord Isaacs*, 2025 WL 2268359, at *3 ("a 'residential subscriber' is a person who maintains a phone for the purposes of their private residence rather than for commercial or business purposes"). Defendants' dictionary definitions tie "residential" to a "residence" or "home," Mot. at 12, but nothing in them speaks to wires or fixed equipment. A person who uses her cell phone for her private life is a residential subscriber in exactly that sense.

Defendants' emphasis on mobility, Mot. at 12–13, confuses the equipment with the subscriber. The statute protects a subscriber's "privacy rights," and "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Hard Eight*, 804 F. Supp. 3d at 1150 (citation omitted); *see also Isaacs*, 2025 WL 2268359, at *4 ("Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same."). And Plaintiff does not dispute that statutory meaning is fixed at enactment, Mot. at 13; the 1991 meaning of "residential telephone subscriber" turned on the subscriber's use, and a cell phone is simply a later instrument through which a residential subscriber receives telephone service.

The statute's structure points the same way. Section 227(b) regulates by technology, referring to "a paging service," "cellular telephone service," and a "residential telephone line." 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B). Section 227(c), by contrast, "focuses not on the equipment used to generate and transmit calls but on end-user protections," and "does not refer to 'residential telephone line' or 'landline' or 'line.'" *Hard Eight*, 804 F. Supp. 3d at 1148. "Congress knew how to denote line-transmission technology because it did so in Section 227(b)," *id.* at 1148–49, and "[h]ad Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone line.'" *Id.* at 1149 (citation omitted); *see also Isaacs*, 2025 WL 2268359, at *3 ("Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber."). Defendants invoke *Russello v. United States*, 464 U.S. 16, 23 (1983), Mot. at 14, but the term Congress omitted from section 227(c) is "line," which cuts against them. Nor is there surplusage. Section 227(b)(1)(A)(iii) reaches autodialed and prerecorded calls to cellular numbers

whether the subscriber is a household or a business, while section 227(c) protects a class of subscribers; Congress elsewhere distinguished a "business subscriber" from a "residential subscriber," 47 U.S.C. § 227(a)(2)(A), and thus "contemplated two different telephone uses—business use and residential use—and did not equate a specific telephone use with a specific transmission technology." *Hard Eight*, 804 F. Supp. 3d at 1149–50.

***3. The FCC's reasoning deserves respect, and Plaintiff's allegations are sufficient***

Plaintiff's reading does not depend on deference, but the FCC's reasoning deserves "appropriate respect," and it addressed Defendants' argument directly. A commenter in the 2003 proceeding urged the FCC to define "residential subscribers" as "telephone service used primarily for communications in the subscriber's residence." 18 FCC Rcd. 14014, 14038 ¶ 34 (2003). The FCC found that definition "far too restrictive and inconsistent with the intent of section 227," explaining that "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA," that "had Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly," and that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." *Id.* ¶ 35. It therefore adopted a rule: "we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.* at 14039 ¶ 36. The implementing regulations apply the Do Not Call rules to "a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), including when a seller texts "wireless telephone numbers." *Id.* § 64.1200(e). One court has found that interpretation entitled to "great weight" because it "was based on factual findings within the FCC's

expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements." *Hard Eight*, 804 F. Supp. 3d at 1151.

Defendants say the presumption exceeds the FCC's authority. Mot. at 14–15. But the presumption does not enlarge the statute; it is a rule about how residential status is proved. The FCC adopted it because "determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber," and it acknowledged that a "complaining wireless subscriber" may be required "to provide further proof." 18 FCC Rcd. at 14039 ¶ 36. Nor does Plaintiff contend that registering a number "create[s] statutory coverage." Mot. at 16. He alleges both that he uses his number for personal, residential, and household purposes and that he registered it, [ECF No. 1] ¶ 21, and registration matters because the Registry is open to residential subscribers. *Barton*, 525 F. Supp. 3d at 202.

Defendants' footnoted assertion that Plaintiff's allegation of residential use is "a conclusory legal label contradicted by the specific factual allegations," Mot. at 14 n.3, is incorrect. That Plaintiff received messages on a "cellular telephone" does not contradict his allegation of how he uses it; how a person uses his phone is a fact. Courts have found comparable or thinner allegations sufficient. *Barton*, 525 F. Supp. 3d at 202 (registration alone); *Hard Eight*, 804 F. Supp. 3d at 1151 (allegations that plaintiff had no home landline, used his cell phone as his residential telephone for "personal and household purposes," and that no business paid his bill "sufficiently pleads a claim under § 227(c)(5)"); *Isaacs*, 2025 WL 2268359, at *4 ("Plaintiff is a 'residential subscriber,' meaning that he is entitled to the TCPA's protections."). If Defendants believe Plaintiff's number is a business line, that is a question of proof for discovery. *See Chennette*, 50 F.4th at 1225–26. The Motion should be denied on this ground as well.

Defendants also request certification under 28 U.S.C. § 1292(b), but only in a footnote and without meaningful analysis. Certification requires a controlling question of law, substantial grounds for difference of opinion, and a showing that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Even assuming the conflicting appellate authority establishes a substantial ground for difference of opinion, Defendants have not demonstrated that an immediate appeal would materially advance this litigation. Their undeveloped request should therefore be denied.

## IV. CONCLUSION

The TCPA was enacted by Congress to protect consumers from unwanted telephone communications. Congress knew that technology would advance and so it broadly worded the statute so that it would keep up with such advances. The plain wording of the statute supports a broad interpretation that encompasses text messages sent to a residential subscriber's cell phone, and Defendants' efforts to avoid liability for their violations should be rejected. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings in its entirety.

Dated: October 14, 2026

Respectfully submitted,

YOSEMIT MARRERO,
By his attorneys,

*/s/ Anthony I. Paronich*
Anthony I. Paronich, Pro Hac Vice
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 14, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anthony I. Paronich*