**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YOSEMIT MARRERO, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD LUNDGREN INC. d/b/a LUNDGREN HONDA OF AUBURN and REACH LOCAL, INC. d/b/a LOCALIQ,<br><br>Defendants. | C.A. No. 25-cv-13925 |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER**
**SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Section 227(c)(5) does not reach text messages. .......... 3

1. No binding decision compels this Court to hold that § 227(c)(5) reaches text messages and Steidinger provides the correct framework. .......... 3

2. The ordinary meaning of "telephone call" in 1991 controls. .......... 6

3. The statutory structure makes clear that telephone calls and text messages are distinct. .......... 9

4. Congress's amendments to the TCPA further confirm that text messages reside outside the scope of § 227(c)(5). .......... 12

5. The FCC's regulations cannot create a cause of action. .......... 13

B. Section 227(c) does not protect cellular telephone subscribers. .......... 14

1. Plaintiff's authorities rest on the FCC's presumption, to which this Court need not and should not defer. .......... 15

a. The courts in *Barton*, *Murray*, and *Chennette* conducted no independent analysis to ascertain the meaning of "residential telephone subscriber." .......... 15

b. The FCC's presumption exceeds its statutory authority. .......... 16

2. The Court should reject Plaintiff's interpretation of "residential" as merely modifying how a telephone is used .......... 17

3. Congress, not this Court, must act to expand the reach of § 227(c)(5) to cellular telephone subscribers. .......... 18

C. Alternatively, certification under 28 U.S.C. § 1292(b) is warranted. .......... 19

III. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) ....................18

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ....................13, 14

*Alvarez v. Fiesta Nissan, Inc.*,
No. 7:25-cv-00343,
2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) ....................7

*Anthony v. Brian Mktg. Grp.*,
No. 24-80800-CIV,
2026 WL 2685650 (S.D. Fla. Sept. 11, 2026) ....................2, 16, 17, 18

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ....................12

*Barton v. Temescal Wellness, LLC*,
525 F. Supp. 3d 195 (D. Mass. 2021) ....................4, 15

*Breda v. Cellco P'ship*,
934 F.3d (1st Cir. 2019) ....................4

*Bronstin v. Happy Cabbage Analytics, Inc.*,
No. 1:25-CV-01083,
2026 WL 3343316 (M.D. Pa. Oct. 29, 2026) ....................1, 5

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ....................3, 4, 6

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
No. 1:26-CV-433,
2026 WL 2673068 (M.D.N.C. Sept. 3, 2026) ....................7, 12

*Chennette v. Porch.com, Inc.*,
50 F.4th 1217 (9th Cir. 2022) ....................16

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) ....................11

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ....................4, 6, 9

*Howard v. Republican National Commitee*,
164 F.4th 1119 (9th Cir. 2026) ....................................................................................6

*Isaacs v. US Health Advisors, LLC*,
No. 3:24-CV-00216-LMM,
2025 WL 22683598 (N.D. Ga. Aug. 7, 2025) ..........................................................16, 17

*Jones v. Blackstone Med. Servs., LLC*,
792 F. Supp. 3d 894 (C.D. Ill. 2025) ..........................................................................11

*Koeller v. OX AppSec Sec., Inc.*,
No. 4:25-cv-0641,
2026 WL 2935851 (E.D. Mo. Sept. 30, 2026)........................................................ *passim*

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)................................................................................................ *passim*

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)...........................................................................................3, 14, 16

*Mey v. Liberty Home Guard, LLC*,
No. 5:23-CV-281,
2026 WL 486556 (N.D. W. Va. Jan. 5, 2026) ..................................................................5

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
55 F.4th 340 (1st Cir. 2022)..........................................................................................15

*New Prime, Inc. v. Oliveira*,
586 U.S. 105 (2019)..........................................................................................................8

*Novia v. Mobiz, Inc.*,
No. 25-CV-11036-AK,
2026 WL 770036 (D. Mass. Mar. 18, 2026)......................................................................4

*Phillips v. GJD Stars Inc.*,
No. 26-61910-CIV,
2026 WL 3060556 (S.D. Fla. Sept. 18, 2026) ......................................................... *passim*

*Russello v. United States*,
464 U.S. 16 (1983)..........................................................................................................18

*Siringi v. Crust Pizza Co.*,
C.A. No. 4:25-CV-04266,
2026 WL 3392348 (S.D. Tex. Nov. 6, 2026) .............................................................1, 4, 7

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
580 U.S. 405 (2017).........................................................................................................13

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) ........ *passim*

*Trim v. Reward Zone USA LLC*,
76 F.4th 1157 (9th Cir. 2023) ........ 9

*United States v. Costello*,
666 F.3d 1040 (7th Cir. 2012) ........ 8

*Ward v. Liberty Mut. Ins. Co.*,
No. CV 24-10526-BEM,
2026 WL 1707142 (D. Mass. June 12, 2026). ........ 4

*Weingard v. Everquote, Inc.*,
No. 26-CV-10197-MJJ,
2026 WL 2056767 (D. Mass. June 29, 2026) ........ 4

*Wilson v. Hard Eight Nutrition*,
804 F. Supp. 3d 1141 (D. Or. 2025) ........ 16, 17

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) ........ 6

**Statutes**

28 U.S.C. § 1292(b) ........ 19

47 U.S.C. § 227(b) ........ 11

47 U.S.C. § 227(c) ........ *passim*

47 U.S.C. § 227(d) ........ 11

47 U.S.C. § 227(e) ........ 9, 13

47 U.S.C. § 227(i) ........ 12

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 (2015) ........ 12

Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) ........ 12

Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572 (2010) ........ 12

**Other Authorities**

Alex Perry, *Hey Gen Z, this is a pager, and in the '90s they were everywhere*,
Mashable (Aug. 31, 2019). ........ 10

David Pogue, *Some Plans That Offer More Than Minutes*,
N.Y. Times (Feb. 14, 2002) ........................................8

https://prepaid.t-mobile.com/connect ........................................8

https://www.mintmobile.com/plans/ ........................................8

Jonathan Rabinovitz, *Teen-Agers' Beepers: Communications as Fashion*,
N.Y. Times (Mar. 8, 1991) ........................................10

Lisa W. Foderaro, *Young Cell Users Rack Up Debt, a Message at a Time*,
N.Y. Times (Jan. 9, 2005) ........................................8

Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC
Rcd. 14014 (2003) ........................................14, 17

## I. INTRODUCTION

The facts that matter under Rule 12(c) are undisputed: Plaintiff alleges that Defendants sent marketing text messages to his cellular telephone and asserts a single claim under 47 U.S.C. § 227(c)(5). D.I. 1 ¶¶ 17, 24–26, 34, 48–54. Accepting every well-pleaded fact as true, this Court must resolve two pure questions of law regarding the meaning of the sole section of the TCPA Plaintiff invokes. The answer to each question, which is independently dispositive, is "no."

First, text messages are not "telephone calls." Section 227(c)(5) creates a private right of action only for a person who has received more than one "telephone call." In 1991, a "telephone call" meant a communication by sound, and text messages—which did not exist until December 1992—do not reproduce sound. The Seventh Circuit is the only circuit court which has addressed and ruled on the direct question presented here: do text messages "fall within the private right of action created by § 227(c)(5)." *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535, 540 (7th Cir. 2026). Since then, the majority of district courts, with the exception of those sitting in the Ninth Circuit, have followed *Steidinger* and held that they do not. Indeed, in the last several weeks, three additional decisions have joined the growing list of holdings that § 227(c) does not provide a cause of action based on text messages. *See Siringi v. Crust Pizza Co.*, C.A. No. 4:25-CV-04266, 2026 WL 3392348 (S.D. Tex. Nov. 6, 2026) (dismissing § 227(c)(5) claim based solely on text messages); *Bronstin v. Happy Cabbage Analytics, Inc.*, No. 1:25-CV-01083, 2026 WL 3343316 (M.D. Pa. Oct. 29, 2026) (same); *Phillips v. GJD Stars Inc.*, No. 26-61910-CIV, 2026 WL 3060556, at *4–5 (S.D. Fla. Sept. 18, 2026)[1] (rejecting the same dictionary, neighboring-provision, and "new application" arguments Plaintiff makes here). Because these holdings doom Plaintiff's

[1] *Phillips* was not published on Westlaw until October 14, 2026, even though the opinion was entered on the case's docket on September 18, 2026.

claim, he overreads precedent, deflects from the ordinary meaning of "telephone call," conflates the various subsections of the TCPA, and resorts to reliance on Congress's inaction and agency interpretation. None of these maneuvers, however, can rewrite the TCPA or rescue Plaintiff's complaint.

Second, § 227(c) does not protect cellular telephone subscribers. Section 227(c) authorizes the FCC to protect only "residential telephone subscribers' privacy rights," and § 227(c)(5) provides a remedy only for violations of the regulations prescribed under that subsection. 47 U.S.C. § 227(c)(1), (5). Not only was a "residential telephone" understood to be a home phone connected to a residence in 1991, but elsewhere in the TCPA Congress treated cellular telephone service as a separate category. Several cases based on the receipt of communications on a cell phone, including cases litigated by Plaintiff's counsel, have been dismissed because they do not concern "residential telephone subscribers." *See Koeller v. OX AppSec Sec., Inc.*, No. 4:25-cv-0641, 2026 WL 2935851, at *2–4 (E.D. Mo. Sept. 30, 2026) (holding § 227(c)(5) "does not extend to subscribers of a cellular telephone service"); *see also Anthony v. Brian Mktg. Grp.*, No. 24-80800-CIV, 2026 WL 2685650, at *12 (S.D. Fla. Sept. 11, 2026). Plaintiff, nonetheless, asks this Court to abdicate its responsibility to construe § 227(c)(5) in favor of the FCC's judgment and to create a cause of action as a matter of good public policy. These requests should be denied.

Because either ground independently defeats Plaintiff's sole cause of action, the Court should grant Defendants' motion and enter judgment in favor of Defendants.

## II. ARGUMENT

### A. Section 227(c)(5) does not reach text messages.

#### 1. No binding decision compels this Court to hold that § 227(c)(5) reaches text messages and *Steidinger* provides the correct framework.

The current judicial landscape, carved by *Loper Bright* and *McLaughlin* and then plowed by *Steidinger*, is the only landscape that matters for this Court. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *Steidinger*, 182 F.4th at 535–40. Plaintiff does not identify any decision in this district, or any circuit-level decision other than *Steidinger*, that has analyzed the specific phrase "telephone call" in § 227(c)(5) in that new landscape. He does not because he cannot. As recently recognized by another district court, "[t]he only Circuit Court of Appeals that has squarely addressed the issue of whether text messages are telephone calls under § 227(c)(5) is the Seventh Circuit, which [in *Steidinger* ruled that] text messages are not telephone calls." *Phillips*, 2026 WL 3060556, at *5, n.2. And, as discussed below, this Court writes on a clean slate within the First Circuit.

Contrary to Plaintiff's argument, neither the Supreme Court nor the First Circuit has decided that a text message is a "telephone call" under § 227(c)(5). *See* Opp. at 1, 3–4 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) and *Breda v. Cellco P'ship*, 934 F.3d (1st Cir. 2019)). In *Campbell-Ewald*, the Supreme Court addressed an altogether different section of the TCPA—§ 227(b)(1)(A)(iii)—and summarily stated that the issue of whether text messages give rise to a cause of action was "undisputed." 577 U.S. at 156. The Supreme Court thus took the dispute as the parties framed it. Yet even if there were any ambiguity as to the import of its holding, the Supreme Court more recently confirmed that its analysis in *Campbell-Ewald* merely "assume[d]" the TCPA reaches text messages "without considering or resolving that issue."

*Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021). For this reason alone, the First Circuit's one-sentence footnote citing *Campbell-Ewald* does not constitute a mandate to this Court to allow Plaintiff's claims to go forward. *Breda*, 934 F.3d at 4 n.1. A passing footnote premised on an assumption the Supreme Court has since disclaimed in a case not even premised on § 227(c)(5) is not relevant—let alone binding—here. *See Steidinger*, 182 F.4th at 537–38 (declining to follow *Breda* and similar decisions because they both "concern claims brought under § 227(b), not § 227(c)(5)" and preceded the Supreme Court's clarification in *Duguid*). Consequently, this Court is free to follow the weight of authority holding that text messages are beyond the only section of the TCPA at issue here. *See, e.g.*, *Siringi*, 2026 WL 3392348, at * 2 (concluding that *Campbell-Ewald* does not foreclose interpretation of § 227(c)(5) proposed by Defendants).

The four decisions from this district Plaintiff cites in his opposition do not change the analysis. For example, *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021), was decided years before the Supreme Court freed district courts from deferring to the FCC's interpretations and rested on *Breda*'s passing footnote. Opp. at 3–4. Though more recent (but still pre-*Steidinger*), the decision in *Weingard v. Everquote, Inc.*, provides no independent analysis and instead cites to, among others, *Breda* and its footnote's citation of *Campbell-Ewald. See* No. 26-CV-10197-MJJ, 2026 WL 2056767, at *5 (D. Mass. June 29, 2026). Similarly, in the context of analyzing class certification issues, the court in *Ward v. Liberty Mut. Ins. Co.*, summarily concluded that §227(b)(1) applies "to both calls and text messages" with only a single citation to the FCC's regulations. No. CV 24-10526-BEM, 2026 WL 1707142, at *2 (D. Mass. June 12, 2026) (involving certification of class members). And the remaining case Plaintiff cites did not even involve text messages. *See Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 770036, at *4 n.2 (D. Mass. Mar. 18, 2026) (involving caller ID issues and footnoting in dicta the *Campbell-*

*Ewald*). These decisions thus present no persuasive authority that the private cause of action provided for in § 227(c)(5) reaches text messages.

Plaintiff's string citation of out-of-circuit, pre-*Steidinger* decisions fares no better. Opp. at 1–2 n.2. For example, these cases look to agency interpretation directly or decisions construing § 227(b) before *Loper Bright*. *See, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 WL 486556 (N.D. W. Va. Jan. 5, 2026) (while stating that it recognized the overturning of *Chevron*, citing both FCC interpretation and pre-*Loper Bright* decisions to support its holding). *Steidinger*, itself, considered several of these decisions and found them inapposite. *See Steidinger*, 182 F.4th at 537–38. Plaintiff also cites district court cases that *Steidinger* implicitly abrogated. Opp. at 2 n.2 (citing two decisions pre-dating *Steidinger* from the Northern District of Illinois). In all events, Plaintiff's assembly of cases is not representative; these decisions must be viewed against the weight of the countervailing authorities interpreting § 227(c)(5) both before and after *Steidinger*. *See, e.g.*, Br. at 3–10. Many of these authorities were recently collected by the United States District Court for the Middle District of Pennsylvania. *Bronstin*, 2026 WL 33433160, at *4 n.3. In *Bronstin*, the district court found "unpersuasive" those cases relied on by the plaintiff (represented by the very same counsel representing Plaintiff here) because they largely defer to the FCC's guidance. *Id.* at *6. For the same reasons, this Court should reject the nonbinding authority Plaintiff presents and join those district court judges in the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits that have applied ordinary principles of statutory construction to hold that text messages are not "telephone calls." *Id.* at *4–7.

The Court should also decline to adopt Plaintiff's characterization of the *Steidinger* decision, itself; *Steidinger* does not suffer from the internal inconsistency Plaintiff attributes to it. Opp. at 9. For example, the Seventh Circuit did not hold that texts are "calls" under § 227(b), but

not under § 227(c). Rather, as discussed above, the circuit court explained that its earlier statements regarding the scope of § 227(b) relied on the Supreme Court's assumption in *Campbell-Ewald*, which *Duguid* later clarified. *Steidinger*, 182 F.4th at 537–38. In addition, *Steidinger* focused on the language of the TCPA, noting that § 227(b)(3) authorizes suit "based on a violation of this subsection" while § 227(c)(5) authorizes suit only by a person who "has received more than one telephone call." *Id.* at 538–39. This difference in text requires independent analysis. Accordingly, the conclusion of one court—like the Ninth Circuit in *Howard v. Republican National Commitee*, 164 F.4th 1119, 1123 (9th Cir. 2026)—that § 227(b) reaches text messages does not compel another court to reach the same conclusion for § 227(c)(5). *See Steidinger*, 182 F.4th at 538 (noting that it was "uncompelled" by other circuits' decisions, including *Howard*, finding text messages to be within the scope of § 227(b)). At bottom, *Steidinger* is neither inconsistent nor an "outlier;" rather than approaching construction of the relevant statutory section by applying a broad brush to the TCPA, the *Steidinger* court focused on the specific language of § 227(c)(5). And whatever the scope of § 227(b)—an issue this motion does not require the Court to decide—§ 227(c)(5) reaches only telephone calls, i.e., not text messages.

**2. The ordinary meaning of "telephone call" in 1991 controls.**

Every statute's meaning is fixed at the time of enactment. *See Loper Bright*, 603 U.S. at 400 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)). And it is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." *Wis. Cent. Ltd.*, 585 U.S. at 284 (internal quotation marks omitted). That straightforward principle yields a straightforward conclusion here—a text message is not a "telephone call." Br. at 3–6.

Plaintiff's principal textual argument is that, in 1991, "call" meant "to communicate or try to communicate with by telephone." Opp. at 4–5. But § 227(c)(5) does not use "call" by itself; it

requires receipt of more than one "***telephone call***." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff nonetheless justifies equating "call" with any "communication" by attempting to claim that "telephone" merely "identifies the instrument" and does not modify "call." Opp. at 9 (citing *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-00343, 2026 U.S. Dist. LEXIS 14155, at *14 (S.D. Tex. Jan. 26, 2026)). But courts that have considered this exact argument have rejected it—and for good reason. For example, in *Phillips v. GJD Stars Inc.*, the plaintiff relied on the same entries in Webster's College Dictionary (1991) and the Oxford English Dictionary (1989) Plaintiff cites here. *Compare Phillips*, 2026 WL 3060556, at *4, *with* Opp. at 4–5. The *Phillips* court held that the argument "falls short" because "it only addresses the term 'call' as it existed at the time the TCPA was drafted, not the term 'telephone call,'" and "the inclusion of both words . . . renders Plaintiff's more generalized definition of 'call' overly broad." *Phillips*, 2026 WL 3060556, at *4.[2] The district court in *Card v. R.J. Reynolds Tobacco Holdings, Inc.* reached the same conclusion: the plaintiff's reading "isolates the word 'call' . . . without taking into account that the statutory language at issue is a 'telephone call,'" and in 1991 a "telephone" was "an instrument for reproducing sounds." No. 1:26-CV-433, 2026 WL 2673068, at *2 (M.D.N.C. Sept. 3, 2026) (quoting *Steidinger*, 182 F.4th at 535–36); *see also Siringi*, 2026 WL 3392348, at *2 (rejecting conclusion in *Alvarez* in view of persuasive treatment of statutory text and structure in *Steidinger*). Because Plaintiff's argument improperly reads the word "telephone" out of the statute, it violates a core canon of statutory construction.

Plaintiff's interpretation also proves too much. If a "telephone call" were any

[2] Congress knew how to use "call" without qualification—it did so in § 227(b)(1)(A), which prohibits "any call" made with an autodialer or artificial or prerecorded voice. If Congress had intended § 227(c)(5) to be construed as Plaintiff suggests, it "more simply could have used the broader term 'call' as it did in § 227(b), rather than 'telephone call' as it did in § 227(c)(5)." *Card*, 2026 WL 2673068, at *3 (citing *Steidinger*, 182 F.4th at 539).

communication sent from one telephone to another, the term would subject virtually all modern communication (e.g., emails, push notifications, in-app messages, etc.) to the TCPA simply because they are received on a phone. But no reader of § 227(c)(5) in 1991 would have understood the term "telephone call" that way.[3]

Critically, common meaning—not an out-of-context dictionary definition—controls. *See, e.g.*, *United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012). As discussed in Defendants' opening brief, common speech establishes that a telephone call and a text message have been and remain distinct concepts. *See* Br. at 3–6. Among other things, carriers have always distinguished between voice calls and text messages. In the early 2000s, phone plans often charged separately for each text message. *See* David Pogue, *Some Plans That Offer More Than Minutes*, N.Y. Times (Feb. 14, 2002) (carriers provide "short-text messaging" as an "added-cost optio[n]" to cellphone plans)[4]; Lisa W. Foderaro, *Young Cell Users Rack Up Debt, a Message at a Time*, N.Y. Times (Jan. 9, 2005) ("[S]ending a text message usually costs 10 cents.").[5] And even today, carriers continue to distinguish between the technologies, advertising unlimited calls ***and*** text messaging. *See, e.g.*, https://prepaid.t-mobile.com/connect (referring to unlimited "talk & text") (last visited Nov. 9, 2026); https://www.mintmobile.com/plans/ (advertising unlimited "Talk & Text") (last visited Nov. 9, 2026). Consequently, to preserve his claims, Plaintiff now contorts both the words

---

[3] *New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019), on which Plaintiff relies, supports Defendants. *See* Opp. at 6. In *New Prime*, the Supreme Court held that original meaning controls over modern intuition. Here, the 1991 evidence—contemporaneous definitions of "telephone" as an instrument for reproducing sound and the absence of any text-messaging technology until December 1992—shows that "telephone call" did not then encompass silent, written messages. *See Steidinger*, 182 F.4th at 535–36.

[4] Available at https://www.nytimes.com/2002/02/14/technology/state-of-the-art-someplans-that-offer-more-than-minutes.html (last visited Nov. 16, 2026) (Ex. A).

[5] Available at https://www.nytimes.com/2005/01/09/technology/young-cell-users-rackup-debt-a-message-at-a-time.html (last visited Nov. 16, 2026) (Ex. B).

of the TCPA as well as the meaning of "telephone call" as it has been understood and used for over thirty years.

Neither this Court—nor courts generally—can treat the TCPA as an "agile tool" to reach modern practices that its text does not cover. *See, e.g.*, *Duguid*, 592 U.S. at 408–09. Plaintiff's closing assertion that Congress "broadly worded the statute so that it would keep up with" technological advances, Opp. at 20, is precisely the purpose-based argument the Supreme Court has rejected. *See Steidinger*, 182 F.4th at 539–40 (citing *Duguid*, 592 U.S. at 408). This Court thus should refuse Plaintiff's invitation to legislate from the bench.

**3. The statutory structure makes clear that telephone calls and text messages are distinct.**

Congress's purposeful and separate usage of "telephone call," "call," "text messages," and "telephone solicitation" within the TCPA's various subsections confirms that these terms have separate meanings.

First, it would be illogical to read the term "telephone call" as swallowing "text messages" in § 227(c) in view of the separate treatment of text messages in § 227(e). *See Trim v. Reward Zone USA LLC,* 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'"). In particular, the 2018 amendment—which added "text message" and "text messaging service"—to § 227(e) demonstrates that, when Congress wants the TCPA to reach text messages, it says so expressly. *Steidinger*, 182 F.4th at 538–39; *Phillips*, 2026 WL 3060556, at *4. Plaintiff thus misses the point in arguing that the 2018 amendment to § 227(e) is irrelevant. *See* Opp. at 11.

Second, that a separate TCPA subsection covers autodialed and prerecorded calls to a

paging service further supports Defendants' position. *Cf.* Opp. at 5. And Congress's reference to paging services reflects the technological reality that when the TCPA was enacted, a pager (like a telephone) could be reached by placing a voice call—and thus was typically referred to as "calling" a pager. *See, e.g.*, Jonathan Rabinovitz, *Teen-Agers' Beepers: Communications as Fashion*, N.Y. Times (Mar. 8, 1991) ("The telephone pagers will signal incoming calls with a high-pitched chirp, and then the owner can look at the beeper to read the number of the person who is calling.");[6] Alex Perry, *Hey Gen Z, this is a pager, and in the '90s they were everywhere*, Mashable (Aug. 31, 2019) ("A sender could call that number and type in a numeric code on their phone or give a message to an operator.").[7] In other words, pagers, while displaying text, have always required a telephone call. And that Congress prohibited using an autodialer to place a call to a "telephone number assigned to a paging service" in § 227(b) does not suggest that a text message is a "telephone call" for purposes of § 227(c)(5). Regardless, whatever Congress meant by "any call" in the autodialer provision, it chose to use the narrower "telephone call" to define § 227(c)(5)'s cause of action.

Third, Plaintiff's argument that § 227(c) as a whole reaches text messages because the definition of "telephone solicitation" covers a "telephone call or message" proves Defendants' point. Opp. at 6–8. Congress chose to use the broad, defined term "telephone solicitation" throughout § 227(c)(1)–(4), but selected the narrower term "telephone call" when it created the private right of action in § 227(c)(5). *Steidinger*, 182 F.4th at 536–37. "[W]hen Congress drafted § 227(c)(5) providing for the private right of action, it conspicuously used the term 'telephone call' instead of 'telephone solicitation' or any other language that would be inclusive of written solicitations." *Phillips*, 2026 WL 3060556, at *4. That choice "supports Defendant's side of the

[6] Available at https://nyti.ms/3Vkgb0N (last visited Nov. 9, 2026).

[7] Available at https://mashable.com/article/pagers-explained-90s-week (last visited Nov. 9, 2026).

argument, not Plaintiff's." *Id.* In addition, because the messages within the TCPA in 1991 were limited to fax messages or voice messages, the argument that the definition of a telephone solicitation—which includes a "telephone call or message"—includes "text messages" fails. *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) (holding that "'telephone call or message' could not be interpreted in 1991 to mean telephone call or *text* message"), *aff'd sub nom. Steidinger*, 182 F.4th 532. And, as previously discussed in Defendants' brief, the phrase "telephone call or message" in § 227(a)(4) that defines a "telephone solicitation" only "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1274 (N.D. Fla. 2025); *see also* Br. at 6–7; *Steidinger*, 182 F.4th at 536.

Fourth, Plaintiff's attempt to collapse "call" and "message" into overlapping concepts fares no better. *See* Opp. at 9–10. When addressing the 1991 analogue to text messaging, i.e., text and images sent by facsimile through telephone lines, the TCPA described those communications as "fax messages;" it did not refer to them as "telephone calls" or describe them as "messages," generally. 47 U.S.C. § 227(d)(1)(B); *Steidinger*, 182 F.4th at 536–37. Moreover, § 227(b)(1)(B), which prohibits a "telephone call" made "to deliver a message," shows only that a telephone call can be the vehicle for delivering a spoken message. *See* 47 U.S.C. § 227(b)(1)(B). And the term "message" or "messages" appears throughout the TCPA in reference to prerecorded voice messages. *See id.* (prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages"). Accordingly, in 1991 Congress addressed "fax messages" and "artificial or prerecorded voice . . . messages" as the "messages" within the TCPA's scope. There is nothing within the TCPA that suggests that a written message transmitted without any call is, itself, a

"telephone call" for purposes of § 227(c)(5). *See, e.g.*, *Azar v. Allina Health Servs*., 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout.").

Fifth, the affirmative defense in § 227(c)(5) does not help Plaintiff. *See* Opp. at 10. Specifically, even though the statute refers to "telephone solicitations" in describing an affirmative defense to the prohibition in § 227(c)(5), the trigger for the prohibition, itself, is a "telephone call." For this reason, the district court in *Card* considered and rejected the very argument Plaintiff presses here, explaining that "the difference in language in the prohibition and the affirmative defense supports distinguishing 'telephone calls' from 'telephone solicitations.'" *Card*, 2026 WL 2673068, at *2 (citing *Richards v. Shein Distrib. Corp*., No. 1:25-cv-01385, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026)). Congress's use of both terms within the same paragraph is strong evidence that these terms have different—not the same—meaning.

**4. Congress's amendments to the TCPA further confirm that text messages reside outside the scope of § 227(c)(5).**

Despite its amendments to the TCPA, Congress has never modified § 227(c)(5). *See, e.g.*, Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359; Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572 (2010); Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584. Nor have the amendments to other sections of the TCPA changed the scope of the statutory section Plaintiff invokes. For example, in connection with the 2019 amendment Plaintiff cites, *see* Opp. at 11, Congress addressed "a call made *or* a text message sent" in violation of subsection (b), *see* 47 U.S.C. § 227(i)(1)(A) (emphasis added). Again, however, Congress treated the two modes as distinct. Moreover, as explained by the Seventh Circuit, that amendment cannot carry the meaning of § 227(b) into the differently-worded § 227(c)(5). *Steidinger*, 182 F.4th at 539 (contrasting the broad language of § 227(b) with the narrow language

of § 227(c)(5)).[8]

In addition, Plaintiff's reliance on congressional inaction, Opp. at 11, runs headlong into the Supreme Court's instruction that, where Congress "has made only isolated amendments," its "failure to act" cannot be read as approval. *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 424 (2017) ("[C]ongressional inaction lacks persuasive significance in most circumstances."); *Steidinger*, 182 F.4th at 538–39. And "statutory stare decisis" does not apply. Opp. at 11 (quoting *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *10 (N.D. Ill. Mar. 27, 2026)). Even before *Steidinger*, courts were split on whether text messages were subject to action under § 227(c)(5) and, therefore, there was no judicial consensus on which Congress could rely. Moreover, this principle cannot convert an agency pronouncement, or district court decisions that inappropriately deferred to one, into binding precedent.

**5. The FCC's regulations cannot create a cause of action.**

Plaintiff disclaims reliance on deference, but his argument still depends on the FCC. Opp. at 12–13. Specifically, Plaintiff continues to rely on 47 C.F.R. § 64.1200(e), which applies the do-not-call rules to "telemarketing calls or text messages to wireless telephone numbers." *Id.* But that regulation implements the national registry under § 227(c)(3), which addresses "telephone solicitations"; it does not, and could not, redefine the "telephone call" trigger in § 227(c)(5). *See Steidinger*, 182 F.4th at 538. Plaintiff's point that § 227(c)(5) incorporates "the regulations prescribed under this subsection" does not change the result: that language "simply clarifies which calls—i.e., those that violate relevant regulations—are the basis for a suit." *Id.* at 539. It does not authorize the FCC to expand the class of communications that can support a private action. *See*

[8] Congress's amendment to § 227(e) to expressly include text messages also belies Plaintiff's arguments. *See supra* at 9.

*Sandoval*, 532 U.S. at 291 (regulation cannot "conjure up a private cause of action that has not been authorized by Congress").

Similarly, the "appropriate respect" owed to the FCC does not tip the scales in favor of expanding the scope of § 227(c)(5). *See McLaughlin*, 606 U.S. at 168. For example, Plaintiff relies upon the 2003 FCC determination that "call" means both traditional voice calls and modern text messages. Opp. at 13. But this determination addressed autodialed calls under § 227(b), not the meaning of a "telephone call" under § 227(c)(5). *See Steidinger*, 182 F.4th at 538; Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). In addition, the agency issued this pronouncement twelve years after Congress enacted the TCPA, and the FCC did not extend Registry protections to texts until 2023. Opp. at 13. As such, it is not an agency view that holds substantial weight. *See Loper Bright*, 603 U.S. at 386–88, 394 (2024) (holding that the agency decisions that deserve the "most weight" are when they are "issued roughly contemporaneously with enactment of the statute and remained consistent over time"). Nor did the FCC's treatment of texts as calls rest on any "factual premises within the agency's expertise." *Id.* at 402 (internal quotation marks omitted). It rested on the agency's policy view that the statute should account for new technologies. The FCC's belated, policy-driven interpretations simply cannot override the statutory text.

* * *

For the reasons set forth in Defendants' opening brief and herein, the Court should follow the well-reasoned decision in *Steidinger* and the cases that follow.

**B. Section 227(c) does not protect cellular telephone subscribers.**

Plaintiff's claim fails for the independent reason that § 227(c) protects only "residential telephone subscribers." 47 U.S.C. § 227(c)(1).

### 1. Plaintiff's authorities rest on the FCC's presumption, to which this Court need not and should not defer.

#### a. The courts in *Barton, Murray,* and *Chennette* conducted no independent analysis to ascertain the meaning of "residential telephone subscriber."

Plaintiff's reliance on a trio of decisions—*Barton*, *Murray*, and *Chennette*—amounts to a request that this Court outsource the interpretation of "residential telephone subscriber" to the FCC. Opp. at 14–16. As conceded by Plaintiff and described below, all three cases look to the FCC's 2003 presumption that wireless subscribers who register on the national Do Not Call list are "residential subscribers." *See* 18 FCC Rcd. at 14039 ("As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'"). And regardless of the propriety of these decisions—all rendered in the now bygone era of *Chevron* deference—they are neither binding nor persuasive in connection with the issues presented to this Court today.

In *Barton v. Temescal Wellness, LLC*, Judge Hillman treated the mere fact that the plaintiff pleaded registration on the Do Not Call Registry as sufficient to establish that she was a "residential subscriber" because "the Do Not Call Registry is only open to residential subscribers." *See* Opp. at 14 (quoting *Barton*, 525 F. Supp. 3d at 201–02). But that proposition simply restates, without analysis, the FCC's 2003 presumption. Similarly, the First Circuit's dismissal of the argument that cellular phone users are not "residential subscribers" because it "runs headlong into the FCC's express statements" should be given little, if any, weight in view of *Loper Bright*. *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022) (relying on the FCC's interpretation). In any event, Plaintiff acknowledges that the First Circuit's statement was mere

dicta because it is "not necessary to the First Circuit's holding." Opp. at 15. Similarly, the Ninth Circuit's conclusion in *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1224 (9th Cir. 2022), that plaintiffs' cellular phones were "presumptively residential" does not aid Plaintiff or this Court. *See, e.g.*, *id.* at 1223 (discussing FCC 2003 TCPA Order and presumption based on registry of number on the Do Not Call list). There, the defendants "conceded that cell phones can be 'residential.'" *Id.* at 1227 (Bress, J. concurring); *see also id.* at 1223. The Ninth Circuit majority thus only decided whether the uses of cell phones for both business and residential purposes took such phones outside of the protections afforded to a "residential telephone subscriber" in 47 U.S.C. § 227(c). *Id.* at 1223–26. For all of these reasons, the three decisions Plaintiff presents—none of which conducted the independent analysis *McLaughlin* now requires—should not sway this Court toward denial of Defendants' motion.[9]

**b. The FCC's presumption exceeds its statutory authority.**

Even if the Court were to consider the FCC's presumption, it should decline to adopt it. For example, Plaintiff characterizes the 2003 presumption as merely "a rule about how residential status is proved." Opp. at 18–19. It is not. The presumption "redefined the term 'residential telephone subscriber'" to include wireless subscribers. *Koeller*, 2026 WL 2935851, at *2; *Anthony*, 2026 WL 2685650, at *4. The FCC justified this redefinition with policy considerations, e.g.,

[9] Equally unpersuasive is Plaintiff's attempts to dismiss *Anthony v. Brian Mktg. Grp.*, Case No. 24-80800-CIV, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026), because it arose on a motion for default judgment. Opp. at 16. As set forth in Defendants' opening brief, the district court in *Koeller v. OxAppsec Sec. Inc.*, Case No. 4:25-cv-0641, 2026 WL 2935851 (E.D. Mo. Sep. 30, 2025), reached the same result as the *Anthony* court after full adversarial briefing, including briefing submitted by Plaintiff's counsel here. *Id.* at *1. The *Koeller* court further acknowledged the district court decisions on which Plaintiff relies—including *Isaacs v. US Health Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 22683598 (N.D. Ga. Aug. 7, 2025) and *Wilson v. Hard Eight Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025)—and "s[aw] the issue differently." *Id.* at *2. Plaintiff's only response is that *Koeller* is "out-of-circuit." Opp. at 16. But so, too, are the cases Plaintiff cites in his favor, including *Hard Eight*, *Isaacs*, and *Chennette*.

growing wireless usage and the view that it was "more consistent with the overall intent of the TCPA" to extend protections to cell phones. *Koeller*, 2026 WL 2935851, at *2 (quoting 18 FCC Rcd. at 14039). While those reasons may support legislation, they cannot expand the FCC's authority, which Congress expressly limited to "residential telephone subscribers." *See Anthony*, 2026 WL 2685650, at *11–12. By presuming that registered wireless numbers are residential, the FCC "expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so." *Id.* at *11 (quoting *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1341 (S.D. Fla. 2022)).

**2. The Court should reject Plaintiff's interpretation of "residential" as merely modifying how a telephone is used.**

Both Congress and the FCC used the phrase "residential telephone subscriber" to define those individuals entitled to bring a cause of action under 47 U.S.C. § 227(c)(5). *See* Br. at 11–12. And contemporaneous definitions of "subscriber" included "an individual having commercial telephone equipment installed on his premises." *Anthony*, 2026 WL 2685650, at *7 (quoting Webster's Third New International Dictionary (1986)). In 1991, "a 'residential telephone' [wa]s by its terms a telephone connected with a residence"—in other words, "a home phone." *Koeller*, 2026 WL 2935851, at *2 (quotation omitted). Nonetheless, Plaintiff argues that "residential" describes how a subscriber uses a phone rather than the type of service. Opp. at 16–18. This argument fails for at least three reasons.

Plaintiff's use-based reading, drawn from *Hard Eight* and *Isaacs*, already has been rejected by at least one district court as "atextual and purposivist." *See Anthony*, 2026 WL 2685650, at *8 n.10. Not only does this reading "largely omit[] the word 'telephone' from the statutory phrase," but it "hinges largely on current dictionaries rather than on those in place at the time of enactment." *Id*. It is also inconsistent with the FCC's own later treatment of home-based businesses as

potentially "residential" subscribers. *Id.* Although Plaintiff agrees that the statute's meaning is fixed at enactment, Opp. at 17, he cites no 1991 definition under which a "residential telephone" included a cell phone.

Plaintiff's myopic focus on the fact that § 227(c) does not use the phrase "residential telephone line" and thus denotes use as opposed to equipment is similarly unavailing. *See* Opp. at 17. Among other things, Plaintiff's argument requires reading "residential telephone subscriber" in § 227(c) as identifying persons other than those who use a "residential telephone line" as found in § 227(b). Although technologies and classes of persons are not identical, "in this case, the concepts are inextricably intertwined," because "residential telephone subscriber" is defined "at least in part, by the characteristics of the telephone technology." *Anthony*, 2026 WL 2685650, at *9 n.11. Moreover, Congress knew how to refer to cellular service—it did so repeatedly in § 227(b)—and it "chose not to in describing the types of persons whose privacy would be protected under § 227(c)." *Koeller*, 2026 WL 2935851, at *3; *see Russello v. United States*, 464 U.S. 16, 23 (1983). The TCPA itself thus "presupposes . . . that calls to residential and wireless numbers warrant differential treatment." *ACA Int'l v. FCC*, 885 F.3d 687, 713 (D.C. Cir. 2018).

For all these reasons, Plaintiff's allegation that he uses his cell phone for "personal, residential, and household purposes" is not enough. Opp. at 19 (citing D.I. 1 ¶ 21); *see also Koeller*, 2026 WL 2935851, at *1, *4 (dismissing claims even though plaintiff alleged that his cell phone number was a "non-commercial" number "used for personal residential purposes"). How Plaintiff uses his phone does not convert a cellular service into a residential telephone service.

**3. Congress, not this Court, must act to expand the reach of § 227(c)(5) to cellular telephone subscribers.**

Plaintiff's privacy-based arguments, Opp. at 16–17, cannot change the plain text of the statute. Many Americans may now rely exclusively on cell phones, "so the plain language of the

TCPA may not be as applicable to today's telephone consumer as it was in 1991. But updating the statute to address present needs is Congress's job, not the courts." *Koeller*, 2026 WL 2935851, at *3.

### C. Alternatively, certification under 28 U.S.C. § 1292(b) is warranted.

If the Court denies Defendants' motion, it should certify its order for interlocutory appeal. Plaintiff does not dispute that the motion presents controlling questions of law, and he acknowledges "conflicting appellate authority" that may "establish[] a substantial ground for difference of opinion." Opp. at 20. The remaining factor is plainly met. Plaintiff asserts a single cause of action under § 227(c)(5), on behalf of a putative nationwide class. D.I. 1 ¶¶ 38, 48–54. A ruling from the First Circuit that § 227(c)(5) does not reach text messages, or does not reach cellular subscribers, would end this case before class discovery and class certification. An immediate appeal would therefore "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## III. CONCLUSION

For the reasons above and in their opening memorandum, Defendants respectfully request that the Court grant their motion for judgment on the pleadings and enter judgment in their favor on Plaintiff's sole cause of action. In the alternative, Defendants request that the Court certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: November 16, 2026

*/s/ Heather B. Repicky*

Heather B. Repicky (BBO #663347)
hrepicky@btlaw.com
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Telephone: (617) 316-5317

Mark P. Miller (pro hac vice)
mark.miller@btlaw.com
Paul Olszowka (pro hac vice)
paul.olszowka@btlaw.com
BARNES & THORNBURG LLP
One North Wacker Drive
Chicago, IL 60606-2833
Telephone: (312) 357-1313

*Attorneys for Defendants Richard Lundgren Inc. d/b/a Lundgren Honda of Auburn and Reach Local, Inc. d/b/a LocaliQ*

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2026, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and, if not so registered, that paper copies will be emailed to such parties or their counsel.

*/s/ Heather B. Repicky*